Fecteau, J.
This is an action to recover for alleged employment discrimination. Plaintiff, Elaine Griggs (Griggs) contends that the defendant, Hardwick Knitted Fabrics, Inc. (Hardwick) fired her due to a disability in violation of G.L.c. 15 IB, §4, and that Hardwick’s decision to terminate her employment was in retaliation for Griggs’ seeking workers’ compensation benefits and thus also in violation of G.L.c. 152, iTSB.[1] Hardwick now moves for summary judgment arguing that (1) there is no evidence of retaliation, (2) Griggs’ prior successful application for workers’ compensation disability benefits covering the same time period conclusively establishes that she was incapable of performing the essential functions of her job, and was not disabled within the meaning of c. 15IB, and (3) even if she was disabled and qualified, its production slowdown constituted a legitimate, nondiscriminatory reason for discharging her. For the following reasons, Hardwick’s motion must be DENIED.

BACKGROUND

The undisputed material facts, construed in a light most favorable to Griggs, are as follows. In June 1980, Hardwick hired Griggs as an at-will, wage earning factory worker in its Finishing Department. During the course of her employment, Griggs’ duties included operating both a Passat and a splitting machine; these duties required intensive use of her hands.
In March 1994, Griggs reported a work related injury, Carpal Tunnel Syndrome (CTS), to Hardwick who then reported her injury to its workers’ compensation insurance carrier, A.I.M. Mutual Insurance Company (AIM). Hardwick’s workers’ compensation insurance policy emphasized controlling future claims and avoiding future claims. It also was a loss-sensitive plan, which in simple terms, entitled Hardwick to a refund if its employees’ claims for benefits were under a certain point, but also obligated Hardwick to pay more if its employees’ claims were over a certain point (e.g. if more was paid to them under the policy). See Exhibit M attached to Appendix to Plaintiffs Opposition to Defendant’s Motion.
Griggs continued to work until August 25, 1994 when she took a leave of absence from Hardwick, due to her CTS. At some point thereafter, Griggs had two surgeries to treat and correct her CTS condition, and on September 1, 1994, Griggs began receiving workers’ compensation benefits. All told, Griggs was absent from her job on extended leave and did not go to work from August 26, 1994 through March 17, 1995, as well as from April 5, 1995 through June 18, 1995.
In anticipation of Griggs’ return to work, Hardwick created “in house” a special handle for the cart she used, purchased a special set of scissors for her, and fixed flooring in and around her work area to eliminate unevenness. On June 19, 1995, Griggs returned to work full time.
On July 19, 1995, David Persky of Hardwick, contacted Dennis R. Gutride, the Regional Underwriting Examiner AIM, seeking the impact on Hardwick of Griggs’ claim for workers’ compensation benefits.[2]
Beginning in September 1995, however, Hardwick experienced a production slowdown in business, and on September 22, 1995, Hardwick laid off three people, including Griggs, from its Finishing Department.[3] Hardwick replaced Griggs with a fellow co-worker who was allegedly more industrious.[4]
At the time Hardwick discharged Griggs, it retained at least six other handicapped persons, including two in its Finishing Department. Moreover, from 1992 through 1995, inclusive, Hardwick employed at least nine (9) individuals who had sustained job-related injuries for which workers’ compensation benefits had been paid to them, and who were not laid off during the last quarter of 1995. Altogether, from September 22, 1995 through November 4, 1995, Hardwick laid off eighteen (18) employees — ten (10) from the Finishing Department and eight (8) from the Knitting Department. (See Affidavit of Kathleen Crevier at p. 3 set forth in the Appendix to the Defendant’s Motion for Summary Judgment.)[5]
After being laid off, Griggs initiated the legal and administrative proceedings that ultimately culminated in the filing of the underlying complaint with this court. Beginning on or about October 7, 1995, Griggs applied for, but was denied, unemployment benefits from the Massachusetts Department of Employment and Training (DET). It is important to note that in response to question one, Griggs certified under oath that from September 24, 1995 through September 30, 1995 and from October 1, 1995 through October 7, 1995, she was “not able, available, and actively seeking work.” Further, the words “Due to Physical Disability” were handwritten on the face of the application adjacent to Griggs’ negative response to question one. (See Exhibit 3 attached to “Plaintiffs Dep. Excerpts” set forth in the Appendix to the Defendant’s Motion for Summary Judgment.)
Next, on or about October 10, 1995, Griggs filed an administrative claim with the Massachusetts Commission Against Discrimination (MCAD) alleging that Hardwick discharged her based on her purported handicap, Carpal Tunnel Syndrome, and her age (d.o.b. 1/3/39) in violation of G.L.c. 151B, the Americans with Disabilities Act, and the Age Discrimination *579 in Employment Act. An MCAD investigator found that the reported evidence supported Hardwick’s claim that the decision to discharge Griggs was due to a downturn in business, and dismissed Griggs’ complaint. Griggs appealed, but the MCAD upheld its original lack of probable cause finding.
Subsequently, on October 12, 1995, Griggs applied to the Massachusetts Department of Industrial Accidents (DIA) for “[tjemporary, [t]otal [i]ncapaciiy [c]om-pensation from September 21, 1995 [the day before she was laid off] to date and continuing. ” In June 1996, Griggs settled her worker’s compensation case against Hardwick for a lump sum payment of $30,000.00. As of June 1996, Griggs had also received $21,024.82 in weekly workers’ compensation benefits.
Finally, on August 20, 1998 Griggs filed the instant complaint seeking damages for alleged employment discrimination. Hardwick argues that the undisputed facts set forth above fail to demonstrate that, as a matter of law, it unlawfully discriminated against Griggs on the basis of her purported disability.

DISCUSSION

1. Standard of Review
This court grants summary judgment where there are no genuine issues of material fact, and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). Its role is to “pierce the boilerplate of the pleadings and assay the parties’ proof in an effort to determine whether trial is actually required.” Harris v. Harvard Pilgrim Health Care, Inc., 20 F.Supp.2d 143, 146-47 (D. Mass. 1998), citing McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995).
To succeed in a motion for summary judgment, the moving party must demonstrate the absence of evidence to support the nonmoving party’s position. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party has carried this burden, the onus shifts to the nonmoving party to respond and offer significant probative or admissible evidence identifying a disputed issue of material fact. See McKenzie v. Brigham & Women’s Hosp., 405 Mass. 432, 437-38 (1989); Michaelson v. Digital Financial Servs., 167 F.3d 715, 720 (1st Cir. 1999) (same). Further, despite the judicial reluctance to grant summary judgment in the context of discrimination cases based on disparate treatment, as here, its procedural utility is not always inappropriate, Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 439-40 (1995), and will be granted where the defendant demonstrates that the plaintiff s evidence of intent, motive, or state of mind is insufficient to support a judgment in plaintiffs favor. See Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 541-42 (1995) (affirming summary judgment in favor of defendant).
II. Merits of Hardwick’s Motion for Summary Judgment
A. Count I — Violation of G.L.c. 151B
Griggs alleges in Count I of her complaint that Hardwick violated G.L.c. 151B, §4(16) by terminating her due to her purported handicap, to wit, bilateral Carpal Tunnel Syndrome, although she was able to perform the essential functions of her job. General Laws, c. 15IB, §4(16) provides in material part that:
an employer may not “dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation.”
(Emphasis added.)
As direct evidence of discriminatory animus is rarely available, disparate treatment may be shown circumstantially by using the familiar tripartite burden-shifting and order of proof paradigm conceived by the Supreme Court for use in Title VII cases. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). See also City of Boston v. Massachusetts Com'n Against Discrimination, 47 Mass.App.Ct. 816, 821 (1999); Blare, supra at 440 and 445 (“smoking gun evidence is rare”); Tate v. Department of Mental Health, 419 Mass. 356, 361 (1995). Accord Thomas v. Eastman Kodak Co., 183 F.3d 38, 61 (1st Cir. 1999) (“in the context of a motion for summary judgment, courts must be very cautious about sua sponte finding non-discriminatory reasons for apparently disparate treatment . . . discrimination, rarely explicit. . . may be proven through elimination of other plausible nondiscriminatory reasons until most plausible reason remaining is discrimination”); Mullin v. Raytheon Co., 164 F.3d 696, 699 (1st Cir. 1999) (affirming grant of summary judgment for employer). Oilman v. Bank of Boston, Civil Action No. 94-5950 (Suffolk Sup. Ct. April 1, 1996) (same).
Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Handrahan v. Red Roof Inns, Inc., 43 Mass.App.Ct. 13, 14 (1997). Once the plaintiff has established a prima facie case, the burden shifts to the employer, at the second stage, to articulate a legitimate, nondiscriminatory reason for its actions. Blare, supra at 441.[6] If the employer proves that it had a legitimate reason, the employee, at the third stage, must prove, that the employer’s asserted reason was not the true reason, but rather a pretext. Id. at 444-45. “Throughout this three stage analysis, the burden of proof — as opposed to the burden of production — remains with the plaintiff.” City of Boston, 47 Mass.App.Ct. at 821.
*580 1. Stage One: The Prima Facie case
It now appears to be settled law in this Commonwealth that to establish a prima Jade case of unlawful employment discrimination on the basis of handicap pursuant to G.L.c. 151B, §4(16), a plaintiff must present credible evidence that: (1) she is handicapped within the meaning of the statute; (2) she is qualified to perform the essential functions of the job with or without reasonable accommodation; (3) she was terminated by her employer; and (4) her employer sought to fill her position by hiring another individual with qualifications similar to the plaintiffs. See Dartt v. Browning-Ferris Industries, Inc., 427 Mass. 1, 2 (1998) (emphasis added) (discussing and recognizing the Court’s inconsistent precedential application of c. 15 IB and the resultant confusion created thereby). Griggs must thus establish that she has a reasonable expectation of proving each element of a prima facie case of handicap discrimination. See Kourouvacilis v. General Motors Corp., 410 Mass. at 716.
Griggs has surmounted the hurdle at stage one. It is uncontroverted that Griggs was terminated and that Hardwick filled her position with another employee who had similar qualifications. Moreover, Hardwick does not, with one dispositive and relevant exception discussed shortly, seriously dispute that in its opinion Griggs was “qualified” to perform the essential functions of her job as of the date of her termination. See Affidavit of Kenneth Piazzo at 2 attached to the Appendix to the Defendant’s Motion for Summary Judgment (“Piazzo Aff.”). The difficulty with Griggs’ case as pointed out by Hardwick, however, is twofold, namely, is she “handicapped” for purposes of c. 15IB? And if so, is she a “qualified handicapped person” under the statute? As set forth below, this court answers both questions in the affirmative.
a. Handicapped Person .
A “handicapped person” is loosely defined as “any person who [1] has a physical or mental impairment which substantially limits one or more of such person’s major life activities, [2] has a record of such impairment, or [3] is regarded as having such [an] impairment.” G.L.c. 151B, §1(17). As taught by Dartt, in order to survive a motion for summary judgment, Griggs must, as part of her prima Jade case, present some credible evidence that she is handicapped. 427 Mass. at 2.
Although the record is entirely bereft of any indication that Griggs’ CTS “substantially limits one or more of [her] major life activities,” G.L.c. 151B, §1(17), it is uncontroverted that Hardwick made accommodations for Griggs so that she would he able to perform her job upon returning to work after her surgeries for CTS. Drawing all reasonable inferences in the light most favorable to Griggs, this court cannot, although the record is thin, conclude as a matter of law, that Hardwick did not “regard! ] her as having such [an] impairment.” Dartt, supra at 2. See also Plante v. Shawmut Bank, N.A., Civil Action No. 95-0938, 10 Mass. L. Rptr. No. 8, 176, 177 (Worcester Super. Ct. April 12, 1999). Accordingly, we shall assume, albeit without deciding, that Griggs’ CTS rendered her “handicapped” within the meaning of G.L.c. 151B, §1(17). But see Freire v. First National, Civil Action No. 96-4620 (Mass. Super. Ct. July 22, 1998) (allowing employer’s motion for summary judgment where employee had no “residual disability”; further finding no evidence that employer regarded employee as handicapped).
b. Qualified Handicapped Person
A “qualified handicapped person” is statutorily defined as a “handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to [her] handicap.” G.L.c. 151B, §1(16). Notwithstanding Hardwick’s implicit contention that it terminated Griggs, not because she was disabled, but because she was not as industrious as another employee, Hardwick argues that Griggs’ prior statements to the DET and the DIA are inconsistent with her discrimination claim and is thus barred. Hardwick points to: (1) Griggs’ statement on her application to the DET for unemployment benefits in which she reported that she was “not able, available, and actively seeking work [d]ue to [p]hysical [disability,” (2) Griggs’ statement on her application to the DIA for “[tjempor-ary, [tjotal [incapacity [c]ompensation from September 21, 1995 to date and continuing”; and (3) Griggs’ receipt of $21,024.82 in weekly workers’ compensation benefits, and her settlement for such benefits in the amount of $30,000.00.
While “[c]ourts are wary of allowing plaintiffs to play fast and loose with the courts by claiming to be too disabled to perform the functions of a job and also claiming that they were terminated from their positions despite being able to perform those same functions,” Labonte v. Hutchins & Wheeler, 424 Mass. 813, 819 (1997), disability and discrimination claims are not mutually exclusive remedies. Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 806 (1999) (declining employer’s invitation to create a rebuttable presumption that disability and discrimination claims were mutually exclusive remedies); Labonte, supra at 819. Accord D’Aprile v. Fleet Servs. Corp., 92 F.3d 1 (1st Cir. 1996) (same). But see Beal v. Board of Selectmen of Hingham, 419 Mass. at 543; August v. Offices Unlimited, Inc., 981 F.2d 576 (1st Cir. 1992). “The focus remains on whether the specific facts surrounding the claim for benefits — its timing, its basis and the factual statements made therein by the plaintiff — have eliminated any dispute of material fact with respect to plaintiffs ability to perform the essential functions of her job.” Pyrcz v. Branford College, Civil Action No. 98-1365, 10 Mass.L.Rptr. No. 18, 419, 420 (Middlesex Super. Ct. July 26, 1999).
*581 In Cleveland v. Policy Management Systems Corp., an employee, after being terminated from her job, applied for and received, disability benefits on the basis that she was “unable to work due to [her] disability.” 526 U.S. at 799. The employee subsequently sued her employer for handicap discrimination claiming that she was terminated in spite of her ability to “perform the essential functions of her job.” Id. Justice Breyer, delivering the opinion for a unanimous Court concluded although disability and discrimination claims are not mutually exclusive, to survive a motion for summary judgment the employee must proffer “a sufficient explanation” to overcome the “apparent contradiction” between them. Id. at 806. Specifically, the Court held that,
when faced with an employee’s previous sworn statement asserting “total disability” or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of a [disability] claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff’s good faith belief in, the earlier statement, the plaintiff could nonetheless “perform the essential functions” of her job, with or without “reasonable accommodation. ”
Id. at 807 (emphasis added).
In the present case, Griggs attempts to reconcile her claims for unemployment and worker’s compensation benefits with the instant allegations of handicap discrimination by arguing that she stated that she was “not able, available, and actively seeking work [d]ue to [pjhysical [disability” because she felt that she was limited in what she could do, and would need accommodations to perform certain tasks. See Griggs’ Deposition Excepts attached to the Appendix to Plaintiffs Opposition as Exhibit E (“Griggs Depo.”). While she correctly points out that merely applying for benefits does not automatically foreclose a subsequent claim for handicap discrimination, see Cleveland, supra at 805, Griggs fails to proffer any particular evidence or explanation either as to why she reported to the DIA that she was “[t]emporar[ily], [t]otal[ly] [i]ncapacit[ated]. . . from September 21, 1995 to date and continuing,” or as to why she was able to obtain weekly workers’ compensation benefits.
Nonetheless, given the totality of the evidence before the court, and the seemingly low hurdle enunciated by Cleveland, this court finds that it is entirely possible that a reasonable juror could, assuming the truth of, or Griggs’ good faith belief in, her statements to the DET and DIA, conclude that she could perform the essential functions of her job, with or without reasonable accommodation." Id. at 807. See D’Aprille, 92 F.3d at 4 (reversing summary judgment in favor of employer and finding employee’s claim for benefits due to disability did not bar her from maintaining discrimination action). But see Beal, 419 Mass. at 543 (affirming summary judgment in favor of employer where employee previously stated that she considered herself “temporarily disabled); August, 981 F.2d at 584; Pyrcz, supra at 421 (allowing summary judgment in favor of employer because disability and discrimination claims could not be reconciled).
Accordingly, this court finds that Griggs has established a prima facie case of discrimination based on handicap.
2. Stage Two — Legitimate, Nondiscriminatory Reason
At this stage, as set forth above, Hardwick can rebut the presumption created by the prima facie case by articulating a legitimate, nondiscriminatory reason for terminating Griggs. In so doing, Hardwick “must not only give a lawful reason or reasons for its employment decision, but also must produce credible evidence to show that the reason or reasons advanced were the real reasons. This burden of production is not onerous.” Blare, supra at 442. (citations omitted).
Hardwick asserts that it discharged Griggs because, during the last quarter of 1995, it had been experiencing a downturn in business. In all, Hardwick ended up terminating at least eighteen (18) employees between September 22, 1995 and November 4, 1995. Moreover, at the time Griggs was laid off, Hardwick had also retained at least six other handicapped persons. Hardwick has proffered the uncontroverted affidavit of Kathleen Crevier, its office manager to support its position. Hardwick further asserts that they terminated Griggs because she was less industrious than her successor. This conclusion was allegedly based on a review of, inter alia, Griggs’ work product, job knowledge, personal qualities, initiative and attitude, and not her purported handicap. See Piazzo Aff. at 2-3. To support this contention, Hardwick further offers the affidavit of Kenneth Piazzo, its Plant Manager. But see Deposition Testimony of Pat Bradley (“Bradley Depo.”), Griggs’ supervisor, attached as Exhibit C to Appendix to Plaintiffs Opposition (no problems with Griggs’ work product), (2) Deposition Testimony of Barbara Guillette (“Guillette Depo.”) attached as Exhibits D & H to Appendix to Plaintiffs Opposition (no problem with Griggs’ work product).
Based on the foregoing, this court concludes that Hardwick has satisfied its burden of advancing a legitimate, nondiscriminatory reason for terminating Griggs, and supporting that reason with credible evidence. The presumption of discrimination has thus vanished, see Blare, supra at 442, and the battle over whether this reason is pretextual begins.
3. Stage Three — Evidence of Pretext
To prevail at this final stage, the onus now shifts to Griggs to “persuade the fact finder by a fair preponderance of the evidence that [Hardwick’s] asserted reasons were not the real reasons for [her] discharge.” See Blare, 419 Mass. at 440-43, quoting from Brunner *582 v. Stone & Webster Eng’g Corp., 413 Mass. 698, 700 (1992). See also Bruce v. Town of Wellesley, 47 Mass.App.Ct. 800, 805 (1999). Accord Mullin v. Ratheon Co., 164 F.3d 696, 699 (1st Cir. 1999). This may be done by articulating and evidencing a “genuine dispute of material fact on the pretext point.” Wooster v. Abdow Corp., 46 Mass.App.Ct. 665, 669 (1999).
In the present case, Hardwick advanced a strong, objectively verifiable set of reasons for discharging Griggs: a business slowdown coupled with Griggs’ relative lack of industry. As is typical in discrimination cases, Griggs fails to identify a “smoking gun” that casts doubt upon the legitimacy of Hardwick’s stated reasons. She does, however, offer sufficient circumstantial evidence to suggest, or at least create a disputed issue of fact as to whether, Hardwick’s stated reasons were pretextual.
In addition to the prima facie evidence set out above “which remains as evidence in the case,” id., quoting from Brownline v. Kanzaki Specialty Papers, Inc., 44 Mass.App.Ct. 408, 413 (1998), to demonstrate pretext Griggs proffers the deposition testimony of her coworker and successor, Barbara Guillette, which discussed Griggs’ former supervisor, Pat Bradley’s, (Bradley) comment that Griggs “could not handle her job.” See Guillette Depo. attached to Appendix to the Plaintiffs Opposition to Defendant’s Motion as Exhibit K. Griggs also offers the deposition testimony of Dennis Gutride (Gutride), Regional Underwriting Examiner for AIM who recalled Hardwick’s inquiry, on July 19, 1995, into the status and financial impact of Griggs’ workers’ compensation claims.
While Bradley’s comment, standing alone, may be “insufficient to prove [Hardwick’s] discriminatory intent,” when coupled with Gutride’s report of Hardwick’s inquiry and the conflicting evidence of her satisfactory work performance, it is possible to take this comment as an allusion to Griggs’ purported handicap, see Tardanico v. Aetna Life & Cas. Co., 41 Mass.App.Ct. 443, 450 (1996), and thus casts doubt on the veracity of Hardwick’s “lack of industry” assertions. At the very least Griggs has articulated, and satisfactorily evidenced, a genuine issue of disputed fact. See Wooster v. Abdow Corp., 46 Mass.App.Ct. at 670-71 (reversing Superior Court award of summary judgment to employer and finding isolated employer’s remark regarding cutting costs coupled with conflicting reports of plaintiffs work performance[7] sufficient to raise genuine issue of material fact as to discriminatory pretext). But see Finney v. Madico, Inc., 42 Mass.App.Ct. 46 (1997) (persistent remarks over three year period that women not qualified to be managers sufficient to withstand motion for summary judgment on claim of discriminatory discharge during reduction in force).
Given the totality of the record before me, and viewing the evidence in a light most favorable to Griggs, this court finds as a matter of law, that her proffer of evidence to support her claim of pretext is sufficient to withstand the instant motion. There is adequate supporting evidence that would enable a fact finder to reasonably conclude that it was more likely than not that Hardwick’s articulated reason was pretext, and that disparate treatment occurred due to Griggs’ CTS. Since the purpose of summary judgment is to “pierce the boilerplate of the pleadings and assay the parties’ proof in an effort to determine whether trial is actually required,” Harris, 20 F.Supp.2d at 146-47, this court finds that Count I must survive. Accordingly, summary judgment on Count I is DENIED.
B. Count H — Violation of G.L.c. 152, §75B
In Count II of her complaint, Griggs alleges that Hardwick discharged her in retaliation for having filed for workers’ compensation. benefits in violation of G.L.c. 152, §75B(2). Specifically, G.L.c. 152, §75B(2) provides in material part that,
No employer or duly Authorized agent of any employer shall discharge, refuse to hire or in any other manner discriminate against an employee because the employee has exercised a right afforded by this chapter.
(Emphasis added.)
As pointed out by Griggs, “Massachusetts courts offer little guidance as to the applicable standards for determining when an employer has acted ’’because" of the employee’s assertion of worker’s compensation rights." Downs v. Massachusetts Bay Transpo. Auth., 13 F.Sup.2d 130, 142 (D.Mass. 1998) (denying employer’s summary judgment on retaliatory discharge claim); Noonan v. Digital Equip. Corp., Civil Action No. 93-1784, 4 Mass. L. Rptr. 631 (Middlesex. Super. Ct. Jan. 30, 1996) (same); Belonni v. Reservoir Nursing Center, Civil Action No. 90-7558, 1 Mass. L. Rptr. 448 (Mass. Super. Ct. Jan. 18, 1994) (same).
Indeed, the cases are silent as to the proper quantum of proof a plaintiff needs to adequately proffer to enable a claim for retaliatory discharge to make it to a jury. What is clear, however, is that where, as here, “intent is at the core of a controversy, summary judgment seldom lies.” Ourfalian v. Aro Mfg. Co., Inc., 31 Mass.App.Ct. 294, 295 n.3 (1991) (reversing Superior Court summary judgment in favor of employer on c. 152, §75B(2) claim), citing Madden v. Estin, 28 Mass.App.Ct. 392, 395 (1990).
Here, while the factual timeline does not appear to support Griggs’ claim for retaliatory discharge— Hardwick (1) rehired Griggs after she took a leave of absence due to a work-related injury and after filing for and receiving workers’ compensation benefits, then (2) fired her — she has presented sufficient evidence to withstand the instant motion. Specifically, she presented, inter alia, the uncontroverted deposition testimony of Gutride, as set forth above, the Regional Underwriting Examiner for Hardwick’s workers’ compensation insurer, AIM who recalled Hardwick’s in *583 quiry, on July 19, 1995, into the status and financial impact of Griggs’ workers’ compensation claims. Without addressing the substance of any conversation, Gutride’s testimony presented evidence, which if believed, created an inference, however slight, that Hardwick had considered the impact or potential impact that Griggs’ past and possible future claims would have on its business.
Viewed in the context of its admitted downturn in business, Hardwick’s self-described decision to lay off workers, its choice to accommodate Griggs’ CTS with special scissors and handles, and its albeit implicit, recognition of Griggs’ inability to perform the essential functions of her job without reasonable accommodations, this court finds that Griggs has proffered sufficient evidence from which a jury could reasonably conclude that Hardwick’s employment decision was motivated at least in part, by Griggs’ workers’ compensation claims.
Summary judgment is therefore DENIED as to Count II of Griggs’ complaint.
ORDER
In light of the foregoing, it is hereby ORDERED that defendant, Hardwick Knitted Fabrics, Inc.’s Motion for Summary Judgment is DENIED.

 Griggs initially filed a three-count complaint, alleging violations of G.L.c. 151B, §4, G.L.c. 152, §7B, and G.L.c. 93A, respectively. Count III has been dismissed by Stipulation of the parties. Accordingly, this Decision addresses only Counts I and II.

 As it turned out, Griggs’ claim for benefits in 1995 had no impact on Hardwick’s workers’ compensation insurance premium. For calendar years 1996 through 1997, however, her 1995 claim increased Hardwick’s premium by approximately $17,000.00. See Exhibit N attached to Appendix to Plaintiffs Opposition to Defendant’s Motion.

 Griggs disputes the characterization that she was “laid off.” Not only is this dispute not material, but it is contradicted by Griggs’ own admissions in the record. See e.g. Plaintiffs Response to Defendant’s First Request for Admissions to Plaintiff, specifically, her application for employment with the Executive Office of Health and Human Services dated February 21, 1997 in which she checked the “laid off’ box as her reason for leaving Hardwick.

 The quality of Griggs’ work product is disputed, and amply supported in the summary judgment record. Compare Affidavit of Kenneth Piazzo (“Piazzo Aff’) attached to Appendix to Defendant’s Motion for Summary Judgment (lack of industry) with: (1) the Deposition Testimony of Pat Bradley (“Bradley Depo.'j, Griggs’ supervisor, attached as Exhibit C to Appendix to Plaintiffs Opposition (no problems with Griggs’ work product), (2) Deposition Testimony of Barbara Guillette attached as Exhibits D & H to Appendix to Plaintiffs Opposition (no problem with Griggs’ work product).

 Griggs does not dispute the layoffs of other workers or the downturn in business. See Plaintiffs Superior Court Rule 9A(b)(5) Statement in response to Defendant’s statement of material facts at para’s. 11 and 12 (“[Griggs] can neither admit nor deny" that Hardwick had experienced a production slowdown and “can neither admit nor deny" that Hardwick laid off eighteen (18) people in the last quarter of 1995).

 “An employer must not only give a lawful reason or reasons for its employment decision but also must produce credible evidence to show that the reason or reasons advanced were the real reasons.” Id. at 442. “The reasons given for the decision may be unsound or even absurd, and the action may appear to be arbitrary or unwise, nonetheless the defendant has fulfilled its obligation.” Matthews, supra at 128 (internal quotation marks and citations omitted).

 See note 4, supra.