# FATOU B. SY *vs.* MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION.

No. 10-P-1743.

Suffolk. May 5, 2011. - July 8, 2011.

Present: GREEN, MEADE, & FECTEAU, JJ.

*Anti-Discrimination Law,* Housing. *Landlord and Tenant,* Discrimination. *Massachusetts Commission Against Discrimination. Practice, Civil,* Review of administrative action. *Administrative Law,* Judicial review.

Discussion of the standards of judicial review of decisions of the Massachusetts Commission Against Discrimination. [763-766]

In a civil action seeking judicial review of a decision of the Massachusetts Commission Against Discrimination (commission) that a landlord engaged in unlawful housing discrimination in violation of G. L. c. 151B, § 4(11), a Superior Court judge incorrectly reversed the decision of the commission on the ground that the apartment was not available, where, given that the commission's interpretation was supported by substantial evidence and reasonably recognized the housing market reality that units are often shown to prospective tenants well before a current tenant's occupancy has ended by landlords hoping for a seamless transition from one tenant to another, the reversal failed to accord the deference due the specialized knowledge of the commission in its determination of what constituted available housing. [766-767]

In a civil action seeking judicial review of a decision of the Massachusetts Commission Against Discrimination (commission) that the landlord engaged in unlawful housing discrimination in violation of G. L. c. 151B, § 4(11), a Superior Court judge incorrectly reversed the decision of the commission on the ground that the apartment was not made generally available to the public by other means of public offering, where the plaintiff failed to raise the issue and the judge should not have considered it, and where, even if the issue had been properly raised, the judge's decision neither stated nor suggested that the commission's interpretation was legally erroneous, and the decision therefore improperly substituted the judge's own view without giving deference to the commission's reasonable view that an advertisement for a particular apartment that brings potential tenants from whom applications are solicited for other units constitutes a public offering within the meaning of G. L. c. 151B, § 1(13). [767-769]

CIVIL ACTION commenced in the Superior Court Department on June 6, 2007.

The case was heard by *Christopher J. Muse*, J., on a motion for judgment on the pleadings.

*Caitlin A. Sheehan* for Massachusetts Commission Against Discrimination.

FECTEAU, J. The Massachusetts Commission Against Discrimination (MCAD) appeals from the allowance of Fatou B. Sy's motion for judgment on the pleadings by a judge of the Superior Court that reversed the MCAD's findings and ruling that Sy had discriminated against Vanessa Ferguson in connection with her application for rental housing. The judge concluded that (1) Ferguson could not bring a discrimination claim based on Sy's rental of the second-floor apartment to another, and (2) that the first-floor apartment was not "available" because Sy had indicated only that it would become available at some indefinite time in the future. On appeal, the MCAD contends that the judge's decision failed to "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it," G. L. c. 30A, § 14(7), inserted by St. 1973, c. 1114, § 3, and thereby undermined the purpose of the fair housing law and the MCAD's authority to enforce it. We reverse.

*Background.* Sy owned a two-family dwelling located at 97 Hazelton Street in the Mattapan section of Boston which she purchased in December, 2001, from Glen Williams, who continued to reside in the first-floor unit as a tenant.

On March 24, 2002, Ferguson saw an advertisement placed by Sy in the Boston Globe for a three-bedroom apartment rental at 97 Hazelton Street, and called to inquire that same day. Sy agreed to show Ferguson the apartment, which she did on the following day. While showing the second-floor apartment, Sy informed Ferguson that there was already an applicant and, pending an inspection, the apartment would be offered to that applicant.[1] Ferguson asked if the first-floor apartment was

---

[1] In March, 2002, Carolyn Small applied for the apartment on the second floor. Sy accepted Small's application, contingent upon inspection by the Metropolitan Boston Housing Partnership. Small moved into the apartment around April 15, 2002. In July, 2005, Small moved out of the apartment because she would be raising her granddaughter and did not want Sy to have to remove the lead from the apartment.

available, and Sy told her that the former owner (Williams) still resided in the unit, but it would be available in May or June.[2] Ferguson called and requested a rental application a day or two later. She completed the application, omitting the ages of her children (she had four, ranging from two to fifteen years in age) and returned it to Sy on March 28, 2002.

Ferguson learned that the earlier applicant for the second-floor apartment was Carolyn Small, a childhood acquaintance. On April 5, 2002, Ferguson spoke with Small, who told her that Sy was considering Ferguson for the first-floor apartment and had asked Small about Ferguson's family status and reliability. On April 7, 2002, Sy called Ferguson and said that she noticed that Ferguson had failed to include the ages of her children in her application. When Ferguson asked why the ages were necessary, Sy told her that she could not rent to families with minor children; Ferguson told Sy she could not refuse to do so, but Sy refused to rent to her. On April 8, 2002, Ferguson filed a complaint against Sy with the MCAD for discriminatory refusal to rent based on familial status and lead paint.[3]

After an investigating MCAD commissioner found probable cause to credit Ferguson's allegations of discrimination based on familial status, the case was presented at a public hearing in August, 2005. As a result, an MCAD hearing officer found and ruled that Sy refused to rent to Ferguson on account of her children and engaged in unlawful housing discrimination in violation of G. L. c. 151B, § 4(11), as inserted by St. 1983,

---

[2] As it turned out, Williams did not move out until August, 2002.

[3] The presence of lead paint in a dwelling unit does not constitute a defense to a charge of discrimination on the basis of children. General Laws c. 111, § 199A, inserted by St. 1993, c. 482, § 17, states, in relevant part: "(*a*) It shall be an unlawful practice for purposes of chapter [151]B for the owner . . . of any premises to refuse to . . . rent, lease or otherwise deny to or withhold from any person or to discriminate against any person . . . because such premises do or may contain paint, plaster or accessible structural materials containing dangerous levels of lead, or because the . . . rental or lease would trigger duties under sections [189]A to [199]B, inclusive, or regulations promulgated thereunder. Any person claiming to be aggrieved by an unlawful practice as herein defined may file a complaint pursuant to section five of [c. 151]B and all provisions of said chapter shall be applicable to such complaints."

c. 628, § 3.[4] The hearing officer rejected Sy's contention that Sy herself had moved into the first-floor apartment prior to its being vacated by Williams, so as to invoke the exception based on owner-occupancy. The hearing officer awarded Ferguson damages of $10,000 for emotional distress.

Sy sought review by the entire commission which, in May, 2007, affirmed the hearing officer's decision in its entirety. Sy then timely commenced an action in Superior Court pursuant to G. L. c. 151B, § 6.[5] There, on Sy's motion for judgment on the pleadings, a judge reversed the MCAD's final decision as unsupported by substantial evidence. Specifically, in concluding that liability under G. L. c. 151B, § 4(11), was not shown, he ruled that the premises in question were not "other covered housing accommodations" as defined in G. L. c. 151B, § 1(13), inserted by St. 1963, c. 197, § 1, specifically because such housing unit was neither "publicly advertise[d] or offere[d]," nor "available" for rent at a "time with any certainty."[6]

*Discussion.* "An administrative agency's final decision is most commonly modified or set aside on judicial review where the court determines that the aggrieved party's substantial rights were prejudiced because the agency's decision was based upon an error of law, was unsupported by substantial evidence, or was arbitrary and capricious." *Connolly* v. *Suffolk County Sheriff's Dept.,* 62 Mass. App. Ct. 187, 192 (2004). The standards of judicial review set forth in the Administrative Procedure Act, G. L. c. 30A, § 14, also regulate judicial review of a final order of the MCAD. See G. L. c. 151B, § 6. Like judicial review of

---

[4]This statute prohibits "the owner . . . of publicly assisted or multiple dwelling or contiguously located housing accommodations or other covered housing accommodations . . . to refuse to rent or lease or sell or otherwise to deny to or withhold from any person such accommodations because such person has a child or children who shall occupy the premises with such person."

[5]The judge described Sy's contentions: that the MCAD's decision was "erroneous as a matter of law and unsupported by substantial evidence. Specifically, Sy contends that there was no evidence that the first-floor apartment was available in March or April of 2002 when Ferguson sought to rent it. In addition, Sy argues that her two-family home was exempt from the provisions of G. L. c. 151B, § 4(11) because she occupied the first floor in April, 2002."

[6]The judge did not disturb the hearing officer's finding that Sy did not occupy the first-floor apartment in April, 2002.

final decisions of other agencies, review of decisions of the MCAD requires "due weight [be given] to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14(7).

Generally, "[t]he duty of statutory interpretation is for the courts . . . but an administrative agency's interpretation of a statute within its charge is accorded weight and deference . . . . Where the [agency's] statutory interpretation is reasonable . . . the court should not supplant [its] judgment." *Dowling* v. *Registrar of Motor Vehicles*, 425 Mass. 523, 525 (1997) (citations omitted), quoting from *Massachusetts Med. Soc.* v. *Commissioner of Ins.*, 402 Mass. 44, 62 (1988). In reviewing a statutory interpretation by an agency, "we must apply all rational presumptions in favor of the validity of the administrative action and not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate." *Massachusetts Fedn. of Teachers, AFT, AFL-CIO* v. *Board of Educ.*, 436 Mass. 763, 771 (2002), quoting from *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 855 (1977). "[A] '[S]tate administrative agency in Massachusetts has considerable leeway in interpreting a statute it is charged with enforcing,' unless a statute unambiguously bars the agency's approach." *Zoning Bd. of Appeals of Amesbury* v. *Housing Appeals Comm.*, 457 Mass. 748, 760 (2010), quoting from *Goldberg* v. *Board of Health of Granby*, 444 Mass. 627, 633 (2005).

The MCAD has been given broad jurisdiction to administer and effectuate the provisions of antidiscrimination statutes. See *East Chop Tennis Club* v. *Massachusetts Commn. Against Discrimination*, 364 Mass. 444, 446 (1973); *Rock* v. *Massachusetts Commn. Against Discrimination*, 384 Mass. 198, 206 (1981). The Legislature has ordered that c. 151B "shall be construed liberally for the accomplishment of its purposes." G. L. c. 151B, § 9, inserted by St. 1946, c. 368, § 4. The Supreme Judicial Court has recognized that it is "particularly appropriate to defer to the MCAD's interpretation [of G. L. c. 151B] where . . . the legislative policy is 'only broadly set out in the governing statute.' " *Dahill* v. *Police Dept. of Boston*, 434 Mass. 233,

239-240 (2001) (citation omitted), quoting from *Rock, supra* at 204. See *Bynes* v. *School Comm. of Boston*, 411 Mass. 264, 269 (1991) (MCAD's interpretations of G. L. c. 151B are "entitled to substantial deference").

Additionally, under the substantial evidence standard, the reviewing court must determine whether an agency decision is supported by "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6), inserted by St. 1954, c. 681, § 1. See *Gnerre* v. *Massachusetts Commn. Against Discrimination*, 402 Mass. 502, 509 (1988). In determining whether substantial evidence exists to support the decision of the agency, the court must be "highly deferential to the agency on questions of fact and reasonable inferences drawn therefrom." *Flint* v. *Commissioner of Pub. Welfare*, 412 Mass. 416, 420 (1992). The substantial evidence standard does not permit the reviewing court to substitute its judgment for that of the agency even if there is evidence to support the court's point of view. See *Boston* v. *Labor Relations Commn.*, 48 Mass. App. Ct. 169, 172 (1999).

As noted, the governing statute prohibits "the owner . . . of . . . other covered housing accommodations . . . to refuse to rent or lease or sell or otherwise to deny to or withhold from any person such accommodations because such person has a child or children who shall occupy the premises with such person . . . ." G. L. c. 151B, § 4(11). The principal issue in this case, then, is whether the MCAD's interpretation of "other covered housing accommodations" to include the first-floor apartment owned by Sy was legally tenable, supported by substantial evidence, and consistent with statutory provisions.

According to G. L. c. 151B, § 1(13), "other covered housing accommodations" include "all housing accommodations not specifically covered under subsections 10, 11 and 12,[7] which are directly or through an agent made generally available to the public for sale or lease or rental, by advertising in a newspaper or otherwise, by posting of a sign or signs or a notice or notices on the premises or elsewhere, by listing with a broker, or by any other means of public offering."

---

[7]General Laws c. 151B, § 1(10)-(12), defines forms of housing (publicly assisted, multiple dwelling or contiguously located housing accommodations) which the MCAD found are not at issue here.

Whether the first-floor apartment here was "other covered housing accommodation" depends on whether it was properly considered "available" when, in late March, Sy accepted an application from Ferguson for both apartments, telling her the first-floor apartment would become available in May or June.

1. *Availability.* Finding that Ferguson established a prima facie case of discrimination in housing,[8] specific to the pivotal "availability" element, the hearing officer found that Ferguson "testified credibly that Respondent had told her the first-floor apartment at 97 Hazelton Street would be vacant in two months' time." The hearing officer expressly found that Ferguson asked if the first-floor apartment was available, and that Sy told her that the apartment would be available in May or June, 2002, when the former owner's daughter and grandson "finished out" the school year. The hearing officer found that Ferguson, in fact, intended that the application she submitted to Sy be considered for both the first- and second-floor apartments at 97 Hazelton Street.[9]

However, the judge ruled that "Sy's non-publicly advertised offer to rent the first-floor apartment in the future only suggested of the apartment's availability, and is not substantial evidence upon which to base a determination that the apartment was 'available.' " The judge explained further that: "This is

---

[8]Notwithstanding that the judge and the hearing officer differed in their formulations of the prima facie case, there was no disagreement that the "availability" of the housing unit was the single disputed element between the parties.

[9]While we need not decide whether the judge correctly found that the second-floor apartment advertised was not "available," there is a basis to conclude that the advertised second-floor apartment was "available" at the time it was shown to Ferguson on March 25th: the apartment had not yet been rented to anyone else; an inspection still needed to be completed; and, if that inspection was unsuccessful, the apartment would remain available for a later applicant. Moreover, Sy herself must have considered the apartment to be "available" because she showed it to Ferguson. The lease between Small and Sy for the second-floor apartment was not, in fact, signed until April 8, 2002, the day after Sy contacted Ferguson about her application, asked about the ages of her children, and informed her that she could not rent to families with minor children — itself an unlawful practice in violation of G. L. c. 151B, § 4(7B), inserted by St. 1989, c. 722, § 18 ("For any person to make . . . any [] statement . . . with respect to the . . . rental of . . . other covered housing accommodations that indicates any preference, limitation or discrimination based on . . . children").

particularly so considering that Sy stated that the apartment would be available in two months, but in reality it was not available for five months." Therefore, the judge concluded, there was no evidence that the apartment was "available."

Under the circumstances, we conclude that Sy considered the first-floor apartment "available." She informed Ferguson, in late March, that the apartment would be available in May or June. When Ferguson called Sy to tell her she wished to fill out a rental application, Sy met Ferguson in person and gave her one. Ferguson returned the application as Sy instructed, within three days. Ferguson subsequently learned that the applicant for the upstairs apartment was Small, whom she knew from childhood, and who told her that Sy was considering her (Ferguson) for the first-floor apartment and had asked Small about Ferguson's background. Therefore, Sy herself considered the first-floor apartment "available" because she stated it would be vacant shortly and she voluntarily handed out and took back at least one application from a potential tenant for that unit with the obvious intent of renting it.

The judge's reversal of the MCAD decision because the apartment was not available "in March or April" but "was becoming available in the future, . . . [that it] was more of an expectation than a time with any certainty," failed to accord the deference due the specialized knowledge of the MCAD in its determination of what constituted "available" housing. The MCAD's interpretation is supported by substantial evidence and reasonably recognizes a reality of the housing market: that units are often shown to prospective tenants well before a current tenant's occupancy has ended, by landlords hoping for a seamless transition from one tenant to another. Ferguson understood that the first-floor apartment was not available for occupancy until the existing tenants left which, according to Sy, would be in May or June. Therefore, the judge's decision to reverse the MCAD on the basis that the apartment was not available was incorrect.

2. *Public offering.* The judge decided, as an additional ground for not enforcing the MCAD order, that the apartment was not "made generally available to the public . . . by other means of public offering." However, the plaintiff failed to raise the issue whether the unit in question was made "publicly available,"

and the judge should not have considered the issue. "No objection that has not been urged before the commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." G. L. c. 151B, § 6, inserted by St. 1946, c. 368, § 4. No extraordinary circumstances were urged by Sy or found by the judge. "Since the [owner] failed to raise the issue . . . before the commission, [she] is precluded from raising it in [the] court." *Massachusetts Elec. Co.* v. *Massachusetts Commn. Against Discrimination*, 375 Mass. 160, 172 (1978). See *Boston* v. *Massachusetts Commn. Against Discrimination*, 47 Mass. App. Ct. 816, 819 (1999).

Moreover, even if the issue were properly before us, we would disagree with this aspect of the judge's decision as well. Under c. 151B, § 1(13), "other covered housing accommodations" include housing accommodations "made generally available to the public for sale or lease or rental, by advertising in a newspaper or otherwise . . . or by any other means of public offering." The building was a two-family, nonowner-occupied building, which places it squarely within the purview of c. 151B. As noted, Sy advertised the second-floor unit in a newspaper, clearly aimed "generally" at the "public," and to which "public offering" Ferguson responded. Moreover, as a result of Sy's advertisement, which brought Ferguson to 97 Hazelton Street to view the second-floor apartment, Sy accepted an application for the first-floor apartment. When the judge stated that the apartment was not "available to the public for rent by any means," he failed to consider that Ferguson was drawn to the building by means of a public advertisement, and Sy told her that the first-floor apartment would be available in May or June and accepted an application for both apartments. The judge's decision neither states nor suggests that the MCAD's interpretation is legally erroneous. Instead, the judge appears to have substituted his view that the statutory term "other means of public offering" excludes these facts without giving deference to the contrary view of the MCAD of the statute's applicability in these circumstances.

When an advertisement for a particular apartment brings potential tenants from whom applications are solicited for other

units, the MCAD's view that it is a "public offering" within the meaning of c. 151B, § 1(13), is reasonable and not in conflict with the governing legislation. To rule otherwise would be to frustrate the very purposes of G. L. c. 151B that the Legislature has ordered the MCAD to carry out; contrary to the legislative directive for liberal construction, the judge's narrow view of the statute would allow building owners to discriminate and evade the statutory scheme.

On this record, we cannot say that the MCAD's decision is "wholly lacking in evidentiary support or [is] tainted by errors of law," *Sweeney's Case*, 3 Mass. App. Ct. 284, 286-287 (1975); that its administrative interpretation is not "in harmony with the legislative mandate," *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. at 855; that it is devoid "of any conceivable grounds upon which [it] may be upheld," *Colella* v. *State Racing Commn.*, 360 Mass. 152, 156 (1971); or that it is "patently wrong, unreasonable, arbitrary, whimsical, or capricious." *Brookline* v. *Commissioner of Dept. of Envtl. Quality Engr.*, 398 Mass. 404, 414 (1986).

Consequently, the allowance of the plaintiff's motion for judgment on the pleadings is reversed, and a judgment is to enter affirming the decision of the MCAD.

*So ordered.*