## Markdale E. Windross *vs.* Village Automotive Group, Inc.[1]

No. 07-P-494.

Middlesex. March 18, 2008. - June 3, 2008.

Present: Cohen, Trainor, & Meade, JJ.

*Anti-Discrimination Law,* Employment, Race. *Employment,* Discrimination. *Administrative Law,* Exhaustion of remedies. *Superior Court,* Jurisdiction.

Discussion of G. L. c. 151B, § 4(1), which provides a cause of action for a hostile work environment based on the cumulative effect of a series of abusive acts, even though each in isolation might not be actionable in itself. [863]

Discussion of the requirement, as a predicate to bringing a civil action in Superior Court in which the plaintiff alleges a violation of G. L. c. 151B, that the claimant timely file a complaint of unlawful discrimination with the Massachusetts Commission Against Discrimination, and of the limitation of the scope of the subsequent civil proceeding to matters alleged in the administrative complaint. [863-864]

In a civil action in which the plaintiff alleged that he was subjected to a racially discriminatory hostile work environment in violation of G. L. c. 151B, § 4, the Superior Court complaint was not deficient for failure to exhaust administrative remedies, where the plaintiff's complaint before the Massachusetts Commission Against Discrimination (MCAD), while not specifically pleading a hostile work environment claim as a separate and distinct cause of action, set forth the underlying facts regarding the plaintiff's hostile work environment claim with sufficient specificity that the MCAD reasonably could have been expected to uncover the existence of additional facts giving rise to potential liability on that theory. [864-867]

This court declined to consider an argument raised in a motion for judgment notwithstanding the verdict that had not been raised in a motion for a directed verdict. [867]

There was no merit to a claim that the Superior Court lacked jurisdiction over a civil action in which the plaintiff alleged that he was subjected to a racially discriminatory hostile work environment in violation of G. L. c. 151B, § 4, where, although the plaintiff failed to enter in evidence his complaint before the Massachusetts Commission Against Discrimination, the judge had an ample basis to conclude that such a filing had been made. [867-868]

At the trial of a civil complaint, sufficient evidence existed to establish a racially discriminatory hostile work environment in violation of G. L.

[1]Doing business as Charles River Saab.

c. 151B, § 4, where the jury reasonably could have concluded that the plaintiff had been subjected to severe and perverse harassment that, when viewed objectively, was sufficient to interfere unreasonably with his work performance. [868-870]

This court permitted the plaintiff, as the prevailing party in an appeal from the judgment in a civil action in which he alleged a racially discriminatory hostile work environment in violation of G. L. c. 151B, § 4, to apply for appellate attorney's fees, but the court declined to double any eventual award of costs, because the defendant's appeal was not frivolous. [870]

CIVIL ACTION commenced in the Superior Court Department on March 27, 2000.

The case was tried before *Geraldine S. Hines,* J., and a motion for judgment notwithstanding the verdict was heard by her.

*Mark S. Bodner* for the defendant.

*Brailey E. Newton* for the plaintiff.

MEADE, J. Following a jury trial, the defendant, Village Automotive Group, doing business as Charles River Saab (CRS), appeals from a judgment that found it liable to its former employee, the plaintiff, Markdale E. Windross, for subjecting him to a racially discriminatory hostile work environment in violation of G. L. c. 151B, § 4. CRS claims that because Windross's hostile work environment claim was not specifically pleaded in his complaint to the Massachusetts Commission Against Discrimination (MCAD), it should have been barred for his failure to exhaust administrative remedies; that Windross's Superior Court complaint was similarly deficient; and that its motions for a directed verdict and for judgment notwithstanding the verdict (judgment n.o.v.) were improperly denied. We affirm.

1. *Background.* Windross, a black male of Jamaican descent, worked for CRS, an automobile dealership, as a salesperson between July 1, 1999, and September 1, 1999, when his employment was terminated for poor performance. Following his termination, Windross filed a complaint with the MCAD alleging that CRS, its sales manager, Peter Didick, and its general manager, William West, had subjected him to various acts of employment discrimination based on race, color, and national origin. Thereafter, pursuant to G. L. c. 151B, § 9, Windross timely removed the MCAD complaint to Superior Court, where the case was tried before a jury. CRS moved for a directed verdict

at the close of Windross's case, and again at the close of all the evidence; both motions were denied. The jury returned a verdict in favor of Windross with respect to his hostile work environment claim, but found for CRS on the wrongful termination claim. The jury also returned verdicts in favor of Didick and West on all counts of discrimination against those defendants individually. On April 5, 2005, judgment entered against CRS in the amount of $75,000, plus interest in the amount of $45,246.97. Following the denial of its motion for judgment n.o.v., CRS timely noticed an appeal.

2. *Discussion.* a. *Exhaustion of administrative remedies.* Pursuant to G. L. c. 151B, § 4(1), as appearing in St. 1989, c. 516, § 4, it is unlawful "[f]or an employer, . . . because of the race, color, . . . national origin, . . . or ancestry of any individual . . . to discriminate against such individual . . . in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification." In addition to enabling a plaintiff to bring suit for unlawful acts of discrimination, G. L. c. 151B, § 4(1), has been interpreted to provide a cause of action for a hostile work environment based on the cumulative effect of a series of abusive acts though each in isolation might not be actionable in itself. See *Clifton* v. *Massachusetts Bay Transp. Authy.*, 445 Mass. 611, 616 n.5 (2005), quoting from *Keeler* v. *Putnam Fiduciary Trust Co.*, 238 F.3d 5, 12 (1st Cir. 2001) (acts giving rise to hostile work environment claim may be described as "pinpricks [that] only slowly add up to a wound"). In this context, "[a] hostile work environment is one that is 'pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, [and that] poses a formidable barrier to the full participation of an individual in the workplace.' " *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. 521, 532 (2001), quoting from *College-Town, Div. of Interco, Inc.* v. *Massachusetts Commn. Against Discrimination*, 400 Mass. 156, 162 (1987). Because a hostile work environment claim is a distinct theory of recovery requiring additional elements of proof beyond a showing of discrimination, when it is claimed along with individualized claims of discrimination, the claims must be analyzed separately.

As a predicate to bringing a civil action in the Superior Court

alleging a violation of G. L. c. 151B, a claimant must timely file a complaint of unlawful discrimination with the MCAD. G. L. c. 151B, § 5. "The purpose of this requirement is two fold: (1) to provide the MCAD with an opportunity to investigate and conciliate the claim of discrimination; and (2) to provide notice to the defendant of potential liability." *Cuddyer* v. *Stop & Shop Supermarket Co.*, *supra* at 531. Because those purposes would be frustrated if the claimant were permitted to allege one thing in the MCAD complaint only to allege something entirely different in the ensuing civil action, the scope of the subsequent civil proceeding is limited to matters alleged in the administrative complaint.

CRS maintains that a hostile work environment claim was not specifically pleaded in Windross's MCAD complaint as a separate and distinct cause of action and thus should have been barred for failure to exhaust administrative remedies.[2] In support of this contention, CRS relies on an unpublished decision of the United States District Court for the District of Massachusetts and some Superior Court decisions, which essentially hold that a hostile work environment claim must be brought as a separate cause of action because not all conduct that may be characterized as harassment rises to the level of a hostile work environment. While we are not bound by these decisions, see *College-Town, Div. of Interco, Inc.* v. *Massachusetts Commn. Against Discrimination*, 400 Mass. at 163; *Heritage Jeep-Eagle, Inc.* v. *Chrysler Corp.*, 39 Mass. App. Ct. 254, 258 n.7 (1995), and we do not necessarily quarrel with the idea posited above, they do not properly inform the exhaustion question before us.

Rather, consistent with the general scope of the investigation rule, a claim that is not explicitly stated in the administrative

---

[2]In his MCAD complaint, Windross checked the boxes for race, color, and national origin (specifying Jamaican) in the section of the form directing him to indicate the basis of his cause of discrimination. In his statement of particulars, Windross stated in part: "I am a black male of Jamaican origin. . . . [A]ll during my tenure [working for CRS] I was the only black salesperson . . . . From the beginning of my employment to the end, fellow white sales persons began making hostile remarks in regard to my color for example commenting that they did not know that black persons had white hands on one side, questioning my appearance, all in a manner that was known to management. Fellow employees and the respondent Didick made fun of my pronunciation of certain [words] in the manner of Jamaican pronunciation."

complaint may be asserted in the subsequent Superior Court action so long as it is based on the acts of discrimination that the MCAD investigation could reasonably be expected to uncover. See *Mole* v. *University of Mass.*, 58 Mass. App. Ct. 29, 47 (2003), *S.C.*, 442 Mass. 582 (2004) ("[t]he scope of subsequent court proceedings is limited by the charge filed with the administrative agency and the investigation that can reasonably be expected as a result"); *Lattimore* v. *Polaroid Corp.*, 99 F.3d 456, 464-465 (1st Cir. 1996) (same; referring to G. L. c. 151B claim); *Conroy* v. *Boston Edison Co.*, 758 F. Supp. 54, 58 (D. Mass. 1991) ("where the factual statement in a plaintiff's written charge should have alerted the agency to an alternative basis of discrimination, and should have been investigated, the plaintiff will be allowed to allege this claim in his or her complaint regardless of whether it was actually investigated").[3] In accordance with this rule, "[a]n administrative charge is not a blueprint for the litigation to follow . . . [and] the exact wording of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow." *White* v. *New Hampshire Dept. of Corrections*, 221 F.3d 254, 263 (1st Cir. 2000), quoting from *Powers* v. *Grinnell Corp.*, 915 F.2d 34, 37 (1st Cir. 1990). Rather, as the United States Court of Appeals for the First Circuit held with respect to G. L. c. 151B, for the claim to fall within the scope of the investigation, the plaintiff must "describe the essential nature of the claim and . . . identify the core facts on which it rests." *Lattimore* v. *Polaroid Corp.*, *supra* at 464.

We discern no reason to except hostile work environment

---

[3]See also *Chisholm* v. *United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981) (claims under Title VII of Civil Rights Act of 1964 must arise from "the administrative investigation that can reasonably be expected to follow the charge of discrimination"); *Cheek* v. *Western & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994), quoting from *Jenkins* v. *Blue Cross Hosp. Mut. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir.), cert. denied, 429 U.S. 986 (1976) (Title VII lawsuit following Equal Employment Opportunity Commission complaint is limited in scope to claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations"); *Dorsey* v. *Pinnacle Automation Co.*, 278 F.3d 830, 838 (8th Cir. 2002), quoting from *Nichols* v. *American Natl. Ins. Co.*, 154 F.3d 875, 886-887 (8th Cir. 1998) (plaintiff "may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge").

claims from the general scope of the investigation rule. Even if conduct which may be characterized as harassment may not, by itself, rise to the level of a hostile work environment, this does not mean that a heightened pleading standard exists for claims based on that theory. In relevant part, the MCAD's administrative regulations in effect when Windross filed his complaint required a complainant to include the following information in his administrative complaint: "(a) the date(s) on which such unlawful discriminatory acts occurred; . . . (b) *a concise statement of the alleged discriminatory acts*; . . . [and] (d) appropriate identification of the Complainant(s) and the person(s) alleged to have committed unlawful discriminatory acts . . ." (emphasis supplied). 804 Code Mass. Regs. § 1.10(5) (1999). Consistent with general notice pleading requirements under Mass.R.Civ.P. 8(a), 365 Mass. 749 (1974), this language does not require the claimant to state the specific legal theory on which the claim for recovery is based. See *Whitinsville Plaza, Inc.* v. *Kotseas*, 378 Mass. 85, 89 (1979); *Ciccone* v. *Smith*, 3 Mass. App. Ct. 733, 734 (1975), quoting from Mass.R.Civ.P. 8(a) (complaint is sufficient if it gives fair notice of claims of parties and contains "a short and plain statement of claim showing that the pleader is entitled to relief"). Cf. *Leatherman* v. *Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (finding it "impossible to square the 'heightened pleading standard' [applied to a claim brought under 42 U.S.C. § 1983] with the liberal system of 'notice pleading' set up by the Federal Rules . . . [which] requires that a complaint include only 'a short and plain statement of the claim showing that the pleader is entitled to relief' ").

Consistent with the scope of the investigation rule, the requisite degree of precision in the drafting of an MCAD complaint is satisfied if the core factual allegations underlying the claim are set forth such as to "fairly place[] [the issue] before the agency." *Mole* v. *University of Mass.*, 58 Mass. App. Ct. at 48. This is sufficient to accomplish the twin purposes of the administrative filing requirement without unfairly prejudicing a claimant for inartful pleading.

Here, the underlying facts regarding Windross's hostile work environment claim were set forth with sufficient specificity

such that the MCAD may reasonably have been expected to uncover the existence of additional facts giving rise to potential liability on that theory. Although the words "hostile work environment" do not appear in the complaint, Windross alleged specific underlying facts describing a work environment in which he was persistently subjected to racially abusive comments and other conduct throughout the course of his employment that implicitly were severe and pervasive enough to interfere with the performance of his work. No more was required. See *Anjelino* v. *New York Times Co.*, 200 F.3d 73, 94-95 (3d Cir. 1999) (reference in administrative complaint alleging sexual harassment to "abusive atmosphere" rather than to "hostile work environment" was sufficient to bring hostile work environment claim within scope of complaint); *White* v. *New Hampshire Dept. of Corrections*, 221 F.3d at 263 (Title VII hostile work environment claim fell within scope of plaintiff's administrative complaint where it listed examples of alleged harassing statements; "[t]hough the administrative complaint [did] not spell out all of the specific comments made by various employees, it was sufficient to describe the essential nature of the charge and to lead to a reasonable investigation thereof").

b. *The Superior Court complaint.* Regardless of the sufficiency of the MCAD complaint, CRS maintains that its motions for a directed verdict should have been allowed because Windross's amended complaint failed to set forth a claim for hostile work environment. The immediate problem with this position is that CRS neither raised this argument in its written motions for directed verdict nor argued it before the judge. Pursuant to Mass.R.Civ.P. 50(a), 365 Mass. 814 (1974), a motion for a directed verdict must "state the specific grounds therefor." See *Matley* v. *Minkoff*, 68 Mass. App. Ct. 48, 52 (2007). Although CRS later raised the issue in its motion for judgment n.o.v., that was improper. See *Shafir* v. *Steele*, 431 Mass. 365, 371 (2000) ("a party may not raise an issue in a motion for judgment n.o.v. that was not raised in a motion for directed verdict"). Because CRS failed to raise the issue properly, it is waived.[4]

c. *The Superior Court's jurisdiction.* CRS claims that Wind-

---

[4]A pretrial discussion of the issue with the trial judge revealed that the judge believed that Windross had pleaded sufficient facts to state a hostile

ross failed to enter the MCAD complaint in evidence and thus did not establish that he had filed such a complaint as is required before bringing suit in the Superior Court. This claim is also without merit. Although Windross did not introduce the MCAD complaint itself in evidence, the judge had an ample basis to conclude that such filing had been made. Indeed, the exhibits entered in evidence contained numerous references to Windross's MCAD complaint, including the "Respondents' Position Statement," MCAD Docket No. 99-13-2813, received and marked as exhibit 10, which expressly acknowledges Windross's filing of an MCAD complaint.

d. *Sufficiency of the evidence.* CRS also claims the trial judge erred in denying its motions for a directed verdict and for judgment n.o.v. on the grounds that Windross did not establish that he was subjected to conditions sufficiently severe and pervasive as to constitute a hostile work environment. We disagree. In reviewing a ruling on a motion for a directed verdict or judgment n.o.v., the question before us is the same: "whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.' " *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972), quoting from *Kelly* v. *Railway Exp. Agency, Inc.*, 315 Mass. 301, 302 (1943).

The concept of a hostile work environment claim was developed in the context of sexual harassment case law, and is

---

work environment claim, and the trial would include that theory. To the extent CRS believed that the complaint did not state that claim, the judge informed CRS that it should have brought a motion to dismiss pursuant to Mass.R. Civ.P. 12(b)(6), 365 Mass. 754 (1974). CRS did not so move. To alleviate any prejudice to CRS based on its limited reading of the complaint, the judge allowed the plaintiff to be redeposed on this issue, but she properly refused to postpone the trial. Even if the issue were properly before us, we could not support CRS's crabbed reading of the complaint. "A complaint need not set forth facts with great specificity under Mass.R.Civ.P. 8(a), 365 Mass. 749 (1974)." *Independence Park, Inc.* v. *Board of Health of Barnstable*, 403 Mass. 477, 482 (1988). In fact, rule 8(a) does not require a plaintiff to even allege the correct legal theory if the facts as alleged entitle him to any form of relief. *Ibid. Whitinsville Plaza, Inc.* v. *Kotseas*, 378 Mass. 85, 89 (1979). See *Nader* v. *Citron*, 372 Mass. 96, 104 (1977). See also Smith & Zobel, Rules Practice § 8.2, at 144 (2d ed. 2006) ("conspicuously absent" from rule 8[a] is any requirement that complaint specify cause of action); Mass.R.Civ.P. 8(f), 365 Mass. 749 (1974) ("[a]ll pleadings shall be so construed as to do substantial justice").

dependent upon a finding that the abusive conduct was "sufficiently severe and pervasive to interfere with a reasonable person's work performance." *Muzzy* v. *Cahillane Motors, Inc.,* 434 Mass. 409, 411 (2001). See *Cuddyer* v. *Stop & Shop Supermarket Co.,* 434 Mass. at 532; *Salvi* v. *Suffolk County Sheriff's Dept.,* 67 Mass. App. Ct. 596, 603 (2006). To prevail on this claim, Windross was required to establish a work environment pervaded by harassment or abuse that unreasonably interfered with his work performance, and that such conduct was sufficiently severe and pervasive to interfere with a reasonable person's work performance. *Muzzy* v. *Cahillane Motors, Inc., supra* at 411. "This 'objective' reasonable person standard has been interpreted to mean that the evidence of . . . harassment is to be considered from the 'view of a reasonable person in the plaintiff's position.' " *Id.* at 411-412, quoting from *Ramsdell* v. *Western Mass. Bus Lines, Inc.,* 415 Mass. 673, 677 n.3 (1993). ·

Here, there is ample evidence in the record from which the jury could reasonably conclude that Windross had been subjected to severe and pervasive harassment that, when viewed objectively, was sufficient to interfere unreasonably with his work performance. At trial, Windross established that he was told by the general manager before coming to work for CRS that this was "not like Toyota where you have the United Nations," and that his new coworkers were a "bunch of elder whites" who are "set in their ways"; on more than one occasion, a particular coworker whom he had seen interacting pleasantly with other coworkers gave him a "look of disdain, . . . and just walked away" when he attempted to speak to her; he was prohibited from wearing the company's black Saab shirt because he was black and management "didn't want [him] looking that way in front of customers"; he was told by a coworker that it was his fault when customers were not coming into the showroom; he was reprimanded by a coworker about what customers would think of his haircut; at a staff meeting, a sales manager asserted while looking straight at Windross (who regularly wore a gold chain necklace) "only sleazy salesperson[s] wear gold chains"; his coworkers repeatedly taunted and ridiculed him for his pronunciation of the word "vegetable"; a fellow salesperson laughed at him and told him that something was wrong with his

hands since they were light on one side and dark on the other; he was unfairly blamed for errors made by others; and that all of this was known and tolerated by management. Windross testified that he felt "preoccupied" by the persistent ridiculing, which interfered with his ability to sell cars and caused him to "dread[] coming into work."

Although CRS contested much of this evidence at trial, it is outside our appellate function to reconcile conflicting evidence or consider issues of credibility. *Fox* v. *F & J Gattozzi Corp.*, 41 Mass. App. Ct. 581, 584 (1996). Indeed, in reviewing the denial of CRS's motions for a directed verdict and judgment n.o.v., we are required "to construe the evidence in the light most favorable to the nonmoving party and disregard that favorable to the moving party." *O'Brien* v. *Pearson*, 449 Mass. 377, 383 (2007). Thus, the motions were properly denied. See *Salvi* v. *Suffolk County Sheriff's Dept.*, 67 Mass. App. Ct. at 606 (considered together, "shunning," "snickering," and "name calling" of victim by his coworkers, along with other conduct, "could be interpreted by the jury to form a recognizable 'pattern of mistreatment' of the plaintiff because of his sexual orientation").[5]

3. *Appellate attorney's fees.* Windross has requested an award of attorney's fees on appeal. General Laws c. 151B, § 9, provides for such an award. See *Salvi* v. *Suffolk County Sheriff's Dept.*, 67 Mass. App. Ct. at 610. In accordance with the procedure outlined in *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004), Windross may file his application for appellate attorney's fees and costs within fourteen days of the date of the rescript of this opinion. CRS shall then have fourteen days within which to respond. See *Salvi* v. *Suffolk County Sheriff's Dept.*, supra at 611. However, because CRS's appeal was not frivolous, we decline to double any eventual award of costs. See *Avery* v. *Steele*, 414 Mass. 450, 455-456 (1993); Mass.R.A.P. 25, as appearing in 376 Mass. 949 (1979).

*Judgment affirmed.*

---

[5]At oral argument, CRS waived its claim that the judge abused her discretion in denying CRS's peremptory challenges to the only two persons of color in the venire.