Wilkins, Douglas H., J.
The Defendants Department of Children and Families (“DCF”),[2] Marcia Graves Roddy and Christopher Martel’s Motion to Dismiss (“Motion”) is before the Court in this employment discrimination case brought by plaintiff Loira A. Maldonado against her alleged “two former joint employers,” L.U.K. Crisis Center (“LUK”) and DCF and their agents and representatives. The defendants, Marcia Graves Roddy and Christopher Martel are DCF employees. After hearing and review of the parties’ written submissions, the Motion is ALLOWED WITH LEAVE TO FILE AN AMENDED COMPLAINT.
BACKGROUND
In this case, DCF has raised jurisdictional challenges based upon the allegations of the complaint without introducing additional evidence. The Court can therefore take the allegations of the complaint as true. Williams v. Episcopal Diocese of Massachusetts, 436 Mass. 574, 577 n.2 (Mass. 2002). Maldonado has, however, included additional documentaiy material, not verified by affidavit, including an email sent to plaintiffs attorney on November 5, 2009 during discovery at the MCAD. Such material, even though unsupported by affidavit, is appropriate for consideration when ruling on a rule 12(b)(1) motion. Callahan v. First Congregational Church of Haverhill, 441 Mass. 699, 710 (2004). Moreover, the Complaint, ¶38, specifically refers to testimony of Mr. Bernard R. Kingsley, arguably incorporating the email into the complaint and making it appropriate for consideration. See generally Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004); Schaer v. Brandeis University, 432 Mass. 474, 477 (2000).[3]
The facts apparent from the Complaint and from additional materials admissible on the Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction show the following.
On March 10,2008, the plaintiff filed pro se charges of discrimination with the Massachusetts Commission Against Discrimination (“MCAD”) against LUK and DCF based principally on race, color and national origin discrimination, and retaliation. She alleged that LUK and DCF discriminated her, failed to take effective remedial action, created a pervasive and continuous hostile environment against her, and treated disparately those employees who were in a similar situation but were outside of her protected class. She filed her charges timely. G.L.c. 151B, §5. Her complaint did not name Roddy or Martel as respondents. Nor did it refer to them by name.
In response, DCF, through Ms. Roddy, denied liability, alleged unequivocally that LUK was the plaintiffs only employer and asserted that neither she nor any other DCF employee was involved directly or indirectly in (1) the assignment of cases to plaintiff or any other LUK service coordinator or (2) the supervision or management of any of LUK’s employees’ work performance. Upon receipt of Roddy’s statement, the plaintiff requested permission to withdraw her charge against DCF, stating “I no longer intend to pursue this matter at the Commission.” MCAD dismissed the charge against DCF on June 30, 2008, more than 90 days after the charge had been filed. In its “Dismissal and Notification of Rights,” MCAD stated that “(t]he Complainant is no longer interested in pursuing this matter.”
LUK denied liability, but argued in response to MCAD’s discovery of July 8, 2009 that DCF did assign cases directly to the plaintiff and her co-workers and held all the records of case assignment and management. The plaintiff therefore requested, by motion dated February 6, 2010, that MCAD reinstate her claim against DCF or initiate a complaint against DCF pursuant to 804 CM7R 1.15(3). MCAD denied the *130 motion, with an oral observation that “the Commissioner saw no reason to bring [DCF] back.” As discovery progressed, additional evidence emerged supporting the claim that LUK and DCF’s agents and representatives, including the named defendants in this action, were also aware of and aided and abetted LUK and DCF’s unlawful discriminatory practices. The plaintiff added individual LUK employees as respondents during the course of the proceedings.
On September 23, 2010, plaintiff asked MCAD to close its file. On September 28, 2010, MCAD granted the request and issued a notice of right to sue.
DISCUSSION
I.
DCF first argues, pursuant to Mass.R.Civ.P. 12(b)(1), that the Court lacks subject matter jurisdiction over defendants Roddy and Martel because they were never named as respondents in the MCAD. It invokes the general rule that “the MCAD complaint establishes the claims and factual allegations for the subsequent filing in Superior Court.” Everett v. The 357 Corp., 453 Mass. 585, 602 (2009), and cases cited. The Supreme Judicial Court has, however, rejected the notion “that the administrative complaint sets a rigid ‘blueprint’ for the civil action.” Id., 453 Mass, at 602-OS, citing Powers v. Grinnell Corp., 915 F.2d 34, 38 (IstCir. 1990). Instead,
Under what is often termed the “scope of the investigation” rule, “a claim that is not explicitly stated in the administrative complaint may be asserted in the subsequent Superior Court action so long as it is based on the acts of discrimination that the MCAD investigation could reasonably be expected to uncover.” Windross v. Village Automotive Group, Inc., [71 Mass.App.Ct. 861] at 864-65 [(2008)]. See Powers v. Grinnell Corp., supra at 39, quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970).
Everett, 453 Mass. at 603. The Supreme Judicial Court recently applied the scope of investigation rule, with extensive explanation, in Pelletier v. Town of Somerset, 458 Mass. 504, 513-19 (2010). The allegations found within the scope of the rule in Pelletier, id. at 515-17, resemble the facts supporting the plaintiffs allegations against DCF here, in that they surfaced during MCAD’s investigation and before the MCAD issued its Dismissal and Notification on September 28, 2010. That MCAD chose not to pursue them, even though specifically requested by the plaintiff, does not preclude application of the scope of investigation rule. Id. at 515.
DCF does not contest that the plaintiffs MCAD complaint sufficed to put in issue the allegation that DCF engaged in discrimination (apart from its argument related to Maldonado’s voluntary dismissal of DCF, discussed below). By necessary implication, that claim signified that at least one DCF employee engaged in discrimination, even though the complaint did not name any such employee.
An MCAD complaint need not name an individual respondent “where the plaintiff filed an MCAD complaint against another party and the unnamed party had notice and opportunity to participate in the proceedings.” Butner v. Department of State Police, 60 Mass.App.Ct. 461, 468 n.14, rev. denied, 441 Mass. 1105 (Mass. 2004), citing King v. First, 46 Mass.App.Ct. 372, 374-75 (1999). A-plaintiff raising this exception should “claim and set forth facts to justify an exception to the rule.” Id.
In this case (assuming amendment of the complaint), the plaintiff can show that the factors cited in King (at id.) weigh in favor of jurisdiction against Roddy, who had notice of and participated in the MCAD proceeding by providing DCF’s response to the complaint. Roddy’s response expressly denied her own involvement (as well as that of other DCF employees), thereby revealing her understanding that her own conduct was at issue. As Area Director of the relevant DCF office with responsibilities “for managing the operational, personnel and fiscal functions of the office,” Roddy also had interests similar to DCF and endured no prejudice by her absence from the administrative proceedings, as Maldonado relied upon Roddy’s statements to withdraw her complaint against DCF more than 90 days after filing. Roddy’s assertions that DCF had no role in LUK’s alleged actions also made it difficult for Maldonado to learn of Roddy’s alleged involvement, which she did not discover until much later.
It is hard to say that defendant Martel meets the King test. Nothing in the MCAD record mentions notice to Martel or reflects any participation by him in the proceedings. Maldonado asserts that Martel was the only other DCF employee who could have been the subject of Roddy’s denial of liability for “any other Department employee.” To support her claim of Martel’s involvement, she has attached to her opposition an email from one Bernard Kingsley, which was evidently made part of the discovery before the MCAD. The Kingsley email details Mr. Martel’s involvement in the alleged discriminatory assignment of disparately large caseloads to the plaintiff, as well as his control over assignments, progress and performance of LUK staff. Neither these facts nor the email itself are part of the complaint. Since the email is dated after Maldonado’s dismissal of DCF and before her attempt to reinstate her claim against DCF, it appears that the plaintiff made reasonable efforts to ascertain Martel’s involvement, but was unable to do so before dismissing DCF. It also appears that Martel’s alleged acts are within the scope of investigation rule, as those acts not only are reasonably expected to be uncovered, but they were in fact uncovered.
Crucially, however, there is nothing in the record to show that Martel had any notice of, or ability to *131 participate in, the MCAD proceedings. No facts appear in the motion papers to suggest that there are any unpleaded facts showing that he had notice and an opportunity to conciliate. In these circumstances, failure to name Martel in the MCAD proceedings precludes naming him in this case. The claim against Martel therefore must be dismissed. Since the complaint may be amended, any renewed attempt to assert a c. 15IB claim against Martel individually through specific allegations may be challenged by a partial motion to dismiss the amended complaint.
There is no merit to DCFs argument that the plaintiff has deprived DCF of the opportunity to conciliate. See DCF Memo, p. 7, citing Troconis v. Lucent Technologies, Inc., 160 F.Sup.2d 150, 157 (D.Mass. 2001). The MCAD proceeding was pending against DCF for more than the 90 days set forth in the statute as the minimum period prior to dismissal and filing suit. G.L.c. 15 IB, §9. DCF rested on its position that it was not the plaintiffs employer and had nothing to do with supervising or assigning cases to individual LUK employees. See Comm. v. Aron, 2001 WL 1174153 (Mass.Super. 2001) [13 Mass. L. Rptr. 542] (a respondent’s denial of an MCAD complaint is proof of notice and an opportunity to conciliate). That left little room for conciliation. In any event, the plaintiff took DCF at its word and dismissed the case after the 90-day conciliation period, only to learn later that DCF’s role may have been greater than Roddy acknowledged.[4] When the plaintiff obtained contrary information, she tried unsuccessfully to bring DCF back into the MCAD proceedings, but MCAD declined. There is no suggestion that DCF supported the plaintiffs efforts to bring DCF back into the proceedings so that the parties could conciliate. DCF’s role— perhaps understandably — was to absolve itself of the charges rather than address them in MCAD proceedings. One thing that it did not lack, however, was the opportunity to conciliate.
II.
DCF’s next contention — this one made pursuant to Mass.R.Civ.P. 12(b)(6) — is that the complaint fails to plead sufficient facts to suggest a plausible entitlement to relief. At this early stage of the proceeding, the only question is whether the challenged counts and the facts incorporated therein plausibly show that the plaintiff is entitled to relief. Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). The well pled facts in the complaint are taken as true for present purposes. Id.
While the complaint contains numerous factual allegations regarding the nature of LUK’s operations, the relationship between LUK and DCF, the MCAD proceedings, and the plaintiffs job, it sets forth primarily conclusoiy allegations regarding the alleged acts of discrimination. The plaintiff alleges that the defendants “directly discriminated against Plaintiff during the course of her employment and treated her differently, retaliated against her and subjected her to a hostile environment solely on the basis of her race, color, national origin, and age, and in doing so, aided and abetted DCF and LUK in their discriminatory practices.” Complaint, ¶20. The allegations contained in the various counts of the complaint are only slightly more specific, including general references to violations of her right to safety and privacy, her right to access work-related information, her right to be trained and assigned a workload comparable to that of others and her right not to receive disadvantageous assignments, her right to be treated with courtesy and respect and to perform her duties in a work environment free of harassment, hostility and abuse. See Complaint, ¶37. These allegations speak to the alleged violation of rights, but not the facts constituting the violations. These generalities do not meet the requirement that the complaint allege sufficient facts to suggest a plausible entitlement to relief.
While a defendant may produce documents “relied on ... in framing the complaint” (Marram, 442 Mass. at 45), the rules of pleading as construed by Iannachino, 451 Mass. 636, do not give the plaintiff the benefit of unpleaded facts. At least one reason for that rule is that allegations in a complaint must pass the test of Mass.RCiv.P. 11 before counsel may assert them. I therefore consider the Kingsley email not as part of the allegations of the complaint, but as a factor in deciding whether to allow the plaintiff an opportunity to cure the deficiencies in the complaint. I also consider the fact that the complaint does refer generally to information learned in discovery, including “testimony of Mr. Bernard R. Kingsley,” which may encompass the Kingsley email even though it does not mention it by name. Complaint, ¶¶28, 38.
The shortcomings in the complaint here appear to be purely procedural rather than substantive, because the papers submitted in opposition to the Motion strongly suggest that the plaintiff could meet Iannacchino by pleading more specific facts. The Kingsley email provides specific alleged facts showing discriminatory assignment of disproportionately large caseloads to Spanish-speaking employees (and no one else), particularly when coupled with allegations of negative performance reviews or perceptions that did not take into account the large caseload. See also Complaint, Ex. 4, ¶33 (amended MCAD complaint). These allegations may state a claim for relief. In these circumstances, the defects in the complaint may be cured by amendment. See Feeney v. Dell, Inc., 454 Mass. 192, 214 (2009). Accordingly, the plaintiff is granted leave to amend her complaint to allege more specific facts if she can do so consistent with Mass.R.Civ.P. 11, including but not limited to those in the Kingsley email.
III.
Finally, the defendants challenge the adequacy of the allegations of intentional infliction of emotional *132 distress, both on the basis of workers’ compensation exclusivity and for failure to meet the Iannacchino pleading test. To succeed on this claim, the plaintiff must show that the defendants’ conduct was extreme and outrageous, beyond all possible bounds of decency and otherwise intolerable in civilized society. See generally Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1976). This common-law claim is not displaced by G.L.c. 15IB. See Comey v. Hill 387 Mass. 11, 20 (1982).
DCF cannot obtain dismissal on the basis of the plaintiffs’ allegations that DCF is Maldonado’s “joint employer,” because the plaintiff is allowed to plead in the alternative. Mass.R.Civ.P. Rule 8(e)(2). DCF itself contests that it had any employment relationship with the plaintiff. The workers’ compensation statute does not bar a claim against DCF to the extent that LUK may be found to be her sole employer. See generally Fredette v. Simpson, 440 Mass. 263, 266 (2003). Even if DCF is a co-employer, the workers’ compensation act does not bar a claim against a co-employee “if [the] alleged tortious conduct was not within the course of his employment or did not further [the employer’s] interest.” Brown v. Nutter, McClennen & Fish, 45 Mass.App.Ct. 212, 217 (1998).
The intentional infliction of emotional distress claim against Roddy and Martel must be dismissed with leave to replead for the same reason as the c. 15 IB claim: the complaint pleads nothing more than conclusions. As with the c. 151B claim, though, it appears that sufficient specific factual allegations may be forthcoming.[5] It would be inappropriate to rule at this early stage that the plaintiff cannot maintain such a claim against either or both of them. Assessment of the viability of an intentional infliction of emotional distress count against all defendants must await further development through either a motion to dismiss the amended complaint or, more likely, summary judgment. See Vittands v. Suddutlx 49 Mass.App.Ct. 401, 410-11 (2000).
CONCLUSION
For the above reasons, the Defendants Department of Children and Families, Marcia Graves Roddy and Christopher Martel’s Motion to Dismiss is ALLOWED, WITH LEAVE TO FILE AN AMENDED COMPLAINT ON OR BEFORE DECEMBER 15, 2011.

DCF was previously known as the Department of Social Services. For simplicity, it is referred to throughout as DCF.

For these reasons, the Court denies the Defendants Department of Children and Families, Marcia Graves Roddy and Christopher Martel’s Motion to Strike the Unsworn Email sent by Bernard Kingsley to Plaintiffs Attorney (paper #15.1).

At this stage, the Court makes no determination whatsoever on DCF’s actual role in the underlying events.

Compare Bowman v. Heller, 420 Mass. 517, 522 n.6 (1995) (harassment at employment); Boyle v. Wenk, 378 Mass. 592, 593-95 (1979) (cumulative effect of multiple acts), with Foley v. Polaroid Corp., 400 Mass. 82, 97-100 (1987) (it was not extreme and outrageous to force an employee, who had been acquitted of sexual harassment charges, to sit at a desk in the hallway); Bernard v. Cameron & Colby Co., 397 Mass. 320, 323-24 (1986) (assignment of an employee allergic to tobacco smoke to an office where co-workers were allowed to smoke was not extreme and outrageous); Richey v. American Automobile Ass'n, Inc., 380 Mass. 835, 839 (1980) (an employer’s decision to fire its employee after several absences from work was not extreme and outrageous even though it could have been considered unfair given employee’s medical condition).