NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

20-P-726                                          Appeals Court

15 LaGRANGE STREET CORPORATION[1] & others[2]  vs.  MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION & another.[3]

No. 20-P-726.

Suffolk.     March 19, 2021. - May 13, 2021.

Present:  Vuono, Hanlon, & Shin, JJ.

Anti-Discrimination Law, Employment, Employee, Race, Damages, Termination of employment.  Employment, Discrimination, Retaliation, Termination.  Massachusetts Commission Against Discrimination.  Administrative Law, Hearing, Judicial review, Administrative Procedure Act.  Due Process of Law, Administrative hearing, Notice.  Practice, Civil, Amendment, Judgment on the pleadings.  Notice, Administrative hearing.  Damages, Emotional distress, Attorney's fees, Back pay.

Civil action commenced in the Superior Court Department on January 18, 2019.

The case was heard by Linda E. Giles, J., on cross motions for judgment on the pleadings.

Jack K. Merrill for the plaintiffs.

---

[1] Doing business as The Glass Slipper.

[2] Nicholas Romano and Michael Bennett.

[3] Derrick Sims, intervener.

Simone R. Liebman for Massachusetts Commission Against Discrimination.

Lana Sullivan, for the intervener, was present but did not argue.

SHIN, J. Derrick Sims filed a complaint with the Massachusetts Commission Against Discrimination (commission or MCAD), alleging, among other things, retaliatory termination by his then employer, 15 LaGrange Street Corporation (doing business as The Glass Slipper), and its managers, Nicholas Romano and Michael Bennett (together, respondents). After a public hearing, a hearing officer concluded that, although Sims had failed to prove retaliation, the evidence established that the real reason for his termination was race discrimination, entitling him to lost wages and emotional distress damages. The hearing officer also found the respondents liable on Sims's separate claim of racially hostile work environment. On the respondents' petition for review, the commission affirmed in all respects.

The respondents now appeal from an amended judgment of the Superior Court affirming the commission's decision on judicial review. They argue principally that they were not put on notice that Sims was claiming that he was terminated based on his race. We agree. The facts set out in Sims's complaint did not give reasonable notice of such a claim, and, while the commission had the authority -- if not the obligation -- to issue a complaint

in its own name, it did not do so.  We disagree, however, with the respondents' contention that there was no substantial evidence to support the commission's finding of a racially hostile work environment.  We thus vacate the amended judgment in part and order the matter remanded to the commission for redetermination of emotional distress damages and attorney's fees.

Background.  We summarize the facts found by the hearing officer and the uncontested facts from the administrative record.

The Glass Slipper (club) is a "gentlemen's club" in Boston. It is managed by Romano and Bennett, who are both white, and owned by Romano and Bennett's mother.

Sims, who is Black, began working as a bouncer for the club in August 2010.  He was terminated only a few months later on February 27, 2011.  The previous day, Sims had worked his scheduled day shift but left his post early without finding a replacement.  As a result, when Romano arrived at the club around 6:15 P.M., he found the front door unattended.  Angry, Romano ordered employee Danny Wong to fire Sims, which Wong did the next day.

Sims filed his complaint, on a form made available by the commission, in September 2011.  In the section asking for the cause of discrimination, Sims checked "race," "color,"

"retaliation," and "other." In the section asking for the "particulars," Sims referred to his attached declaration, in which he alleged that, a few months after he started working at the club, he learned that another bouncer was sexually assaulting the dancers. Sims further alleged that Romano treated him less favorably than the white bouncers -- for example, by stationing him outside, ordering him to take out trash, and not allowing him to use the newer walkie-talkies.[4] According to Sims, soon after he reported these issues to Bennett, Wong told Sims that management wanted him gone for "asking too many questions." Based on this, Sims "believe[d] that the Club terminated [him] in retaliation for reporting the discriminatory and illegal practices that were occurring."

In July 2013, after an investigating commissioner found probable cause to credit Sims's allegations and conciliation efforts failed, the commission certified the case to a public hearing. Sims's complaint was attached to the certification, but the certification did not itself identify the particular claims to be decided at the hearing. The investigating

---

[4] We address Sims's allegations of disparate treatment in more detail in connection with our discussion of the evidence supporting his claim of a hostile work environment.

commissioner also waived the certification conference,[5,6] noting that the parties could raise all relevant issues at the prehearing conference with the hearing officer.

In November 2013 the parties submitted a joint prehearing memorandum to the hearing officer. In his summary of the claims, Sims reasserted the allegations in his complaint that Romano treated him less favorably than white bouncers and that Wong told Sims that he was being fired for asking "too many questions." Sims then identified his claims as "discriminat[ion] . . . based on the color of his skin" and "retaliat[ion] . . . for complaining about Mr. Romano's racist behavior and the sexual harassment and assault towards the dancers." The respondents, for their part, noted that the complaint "apparently asserts that [Sims] was . . . terminated . . . because of his race." They argued, however, that there was no evidence to support any such claim and that it should not therefore be certified to a public hearing. They also argued that the case "require[d] a certification conference" and that waiver of that requirement was improper under the regulations.

---

[5] "The Investigating Commissioner, upon his/her own motion if the circumstances so warrant or upon notification by the parties that discovery . . . is complete or unnecessary, shall schedule a conference to determine Certification of Issues to Public Hearing." 804 Code Mass. Regs. § 1.20(1) (1999).

[6] We cite the version of the regulations that was in effect throughout the commission proceedings.

No certification conference was ever held, and at no point did the commission issue a complaint in its own name identifying the issues certified to the hearing.[7]  Thus, unsurprisingly, at the start of the hearing in March 2014, the respondents' counsel asked for clarification, stating that he "was unclear on precisely what the claims were."  Sims's counsel replied:

> "We have a hostile work environment claim based on race. And that was up until the time of the termination and that race played some role in the decision to terminate, but the second claim is also the retaliation for reporting the sexual harassment.

> "So there's essentially two claims.  A hostile work environment based on race up until the time of termination and then the termination being based on retaliation."

Consistent with this characterization, Sims's counsel averred in her opening statement that "[Sims] was fired in retaliation for asking questions about what they were going to do about [the other bouncer] bothering the girls."

---

[7] "When the Investigating Commissioner believes that the public interest requires a certification of issues to public hearing, she or he shall issue a complaint in the name of the Commission, pursuant to [G. L.] c. 151B, § 5.  Following the Certification Conference . . . , and based upon the submissions of the parties at the Conference, and the record, the Investigating Commissioner shall issue an Order, constituting the Complaint of the Commission pursuant to [G. L.] c. 151B, § 5.  The Order shall be in writing, served upon all parties and counsel of record, in hand or by certified mail, which . . . Certifies, to a Public Hearing . . . each and every issue to be considered at Public Hearing, including . . . Complainant's allegations of discrimination . . . ."  804 Code Mass. Regs. § 1.20(3) (2004).

After three days of testimony, the hearing officer issued a written decision in March 2015.  The hearing officer concluded that Sims failed to prove retaliation, finding his testimony that he complained to Bennett and others about the alleged sexual harassment of the dancers to be "vague and unconvincing" and "not . . . believable, particularly given the egregious conduct he [was] alleging occurred."  The hearing officer instead credited Bennett's testimony that Sims never made a complaint.  She also credited Romano's testimony that he was unaware of the sexual harassment allegations.

In addition, the hearing officer credited Romano's testimony that Sims left the front door uncovered on February 26, 2011.  She did not credit Sims's testimony that he secured a replacement before leaving, nor did she credit his testimony that Wong told him Romano wanted him fired for asking too many questions.  Rather, the hearing officer credited Wong's testimony that Romano told him to fire Sims because he had abandoned his post.

Nonetheless, the hearing officer found that the respondents' proffered reason for firing Sims was a pretext -- not for retaliation, but for race discrimination:

> "While Romano may have been angry that [Sims] was not at
> his post on the evening in question, because there was a
> problem generally with other bouncers arriving late for
> their shifts, I conclude that [Sims's] termination was
> motivated by discrimination based on his race.  Romano

acted precipitously and I conclude that he would not have fired [Sims] for a first-time incident if [he] were not [B]lack."

In support for this conclusion, the hearing officer cited Sims's good work history, the lack of "evidence of white bouncers whose employment was terminated," the "strong evidence of Romano's pervasive racist attitude that created a racially hostile work environment," and Romano's "cavalier and dismissive attitude" at the hearing. Also finding the respondents liable for creating a hostile work environment, the hearing officer awarded Sims $25,000 in emotional distress damages and $20,000 in lost wages.

The respondents petitioned for review to the commission. They argued, among other things, that Sims never claimed that his termination was racially motivated and that no such claim was certified to the hearing. The commission disagreed, concluding that Sims made allegations of race discrimination in his complaint and the respondents "were on notice that a claim of race discrimination could well encompass a claim of unlawful termination based on race." Rejecting the respondents' other arguments, the commission upheld the hearing officer's decision and awarded Sims $32,130 in attorney's fees and $4,948.29 in costs. The Superior Court judge affirmed, and this appeal followed.

Discussion. Our review of the commission's decision is governed by G. L. c. 30A, § 14 (7), which requires us to

determine whether a party's substantial rights were prejudiced because the decision was in violation of constitutional provisions, based on an error of law or unlawful procedure, or unsupported by substantial evidence. See G. L. c. 151B, § 6; Wheelock College v. Massachusetts Comm'n Against Discrimination, 371 Mass. 130, 133 (1976). We review the judge's decision de novo. See Doe, Sex Offender Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 89 (2019).

1. Adequacy of notice. While "[d]ue process does not require that notices of administrative proceedings 'be drafted with the certainty of a criminal pleading,'" the notice must be "sufficient for persons whose rights may be affected to understand the substance and nature of the grounds upon which they are called to answer." Langlitz v. Board of Registration of Chiropractors, 396 Mass. 374, 377 (1985), quoting Higgins v. License Comm'rs of Quincy, 308 Mass. 142, 145 (1941). See LaPointe v. License Bd. of Worcester, 389 Mass. 454, 458 (1983); Highland Tap of Boston, Inc. v. Commissioner of Consumer Affairs & Licensing of Boston, 33 Mass. App. Ct. 559, 571 (1992). The Massachusetts Administrative Procedures Act (act) likewise requires "sufficient notice of the issues involved to afford [parties] reasonable opportunity to prepare and present evidence and argument." G. L. c. 30A, § 11. See Strasnick v. Board of Registration in Pharmacy, 408 Mass. 654, 660 (1990);

Vaspourakan, Ltd. v. Alcoholic Beverages Control Comm'n, 401
Mass. 347, 353 (1987).  Furthermore, "[i]n all cases . . . where
subsequent amendment of the issues is necessary," the act
provides that "sufficient time shall be allowed after . . .
amendment to afford all parties reasonable opportunity to
prepare and present evidence and argument respecting the
issues."  G. L. c. 30A, § 11 (1).

We conclude here that Sims's complaint, even read
indulgently, did not provide fair notice of a claim of racially
motivated termination.  Although an MCAD complaint need not
"state the specific legal theory on which the claim for recovery
is based," Windross v. Village Automotive Group, Inc., 71 Mass.
App. Ct. 861, 866 (2008), it must contain "a concise statement
of the alleged discriminatory acts," 804 Code Mass. Regs.
§ 1.10(5) (2004).  Nowhere in his complaint, however, did Sims
allege that he was terminated because of his race.  Sims does
not argue otherwise, and neither he nor the commission point to
any facts set out in the complaint that support a different
reading.  See Highland Tap of Boston, Inc., 33 Mass. App. Ct. at
571-572, quoting Foster from Gloucester, Inc. v. City Council of
Gloucester, 10 Mass. App. Ct. 284, 289-290 (1980) ("The notice,
'taken in conjunction with the hearing, [was not] sufficient to
accomplish substantial justice' [because] it 'misled a licensee
as to the possible grounds for revocation which he should be

prepared to meet at the public hearing'"). Cf. Windross, supra at 867 ("Although the words 'hostile work environment' do not appear in the complaint, [complainant] alleged specific underlying facts describing a work environment in which he was persistently subjected to racially abusive comments . . .").[8]

Moreover, while the lack of notice could have been cured, either by Sims or by the commission, at some later point in the proceedings, that did not occur. Sims and the commission suggest that the respondents were put on notice by Sims's deposition testimony that race "could have factored into" the termination and he "would never take that out of the equation." But we are unaware of any authority supporting the proposition that deposition testimony can suffice to give notice of a claim without a corresponding amendment of the complaint. Indeed, Sims failed even to identify the claim in the joint prehearing memorandum. Cf. Boston v. Massachusetts Comm'n Against Discrimination, 47 Mass. App. Ct. 816, 820 (1999) ("MCAD's

_____

[8] We note that Windross, on which Sims relies, arose in a different procedural posture: the complainant there had removed his MCAD complaint to Superior Court, and the question was whether he had exhausted his administrative remedies by raising a claim of hostile work environment in the complaint. See Windross, 71 Mass. App. Ct. at 862-863. That question, unlike the one before us, did not implicate any due process concerns. We do not decide whether a more lenient pleading standard might be appropriate in the exhaustion context.

counsel filed a joint prehearing memorandum that discussed" claim in question).

The clarification given by Sims's counsel at the start of the hearing also did not suffice to provide notice. Sims and the commission focus on counsel's statement that "race played some role in the decision to terminate" while neglecting to mention her ensuing statement, which made clear that Sims was raising two claims: "[a] hostile work environment based on race up until the time of termination and then the termination being based on retaliation." From this, and from counsel's opening statement, the respondents would reasonably have thought that the sole basis for Sims's claim of unlawful termination was retaliation. The respondents' counsel made no statement indicating a contrary belief. Thus, this is not a case where a claim not raised by the pleadings was tried by consent, as Sims and the commission contend. See Highland Tap of Boston, Inc., 33 Mass. App. Ct. at 571 (notice inadequate where licensee "could properly assume [from it] that the hearing would be concerned with alleged violations related to mismanagement of the premises," and "[a]t the hearing, [licensee's] attorney expressed his understanding that the proceedings were to be limited to such questions"). Cf. Boston, 47 Mass. App. Ct. at 820 (issue not raised by pleadings tried by consent where employer's counsel observed at hearing that "complaint had not

been amended, but did not request, as he could have, additional time to address the . . . issue").

Citing its mandate to eradicate employment discrimination, the commission argues that it was within its authority to find that Sims's termination was racially motivated -- even if Sims himself did not raise that claim -- because the "MCAD process allows the Commission to follow where the facts lead it."  The problem with this argument is that the commission never exercised its authority to define the issues to be decided at the public hearing.  Although the regulations allow amendments to a complaint "by the Investigating Commissioner at any time prior to" certifying the matter to a hearing, 804 Code Mass. Regs. § 1.10(6)(b) (1999), at no point did the investigating commissioner here amend Sims's complaint to include additional allegations of discriminatory practices.[9]  Furthermore, despite the seemingly mandatory language of 804 Code Mass. Regs. § 1.20(3) (2004), the investigating commissioner did not hold a certification conference or issue an order identifying the claims certified to the hearing.[10]  See Temple Emanuel of Newton

---

[9] The investigating commissioner amended the complaint once to clarify that Sims was "alleging retaliation for reporting sexual harassment, but [was] not making a claim of sexual harassment."

[10] The commission represented at oral argument that this was not unusual, as the certification conference is routinely waived.

v. <u>Massachusetts Comm'n Against Discrimination</u>, 463 Mass. 472, 478 (2012). The hearing officer also did not issue a certification order, despite the respondents' request that she do so. Yet, as the regulations provide, the certification order "constitute[s] the Complaint of the Commission." 804 Code Mass. Regs. § 1.20(3) (2004). See <u>Sirva Relocation, LLC</u> v. <u>Richie</u>, 794 F.3d 185, 193 (1st Cir. 2015) (certification to public hearing is "functional equivalent of filing a formal complaint").

While the commission "is allowed to relax the application of the regulations where necessary in the interests of justice," it must not do so where it would "prejudice[] the substantial rights of a party." <u>Boston</u>, 47 Mass. App. Ct. at 819 n.6. See 804 Code Mass. Regs. § 1.01 (1999). We grant that there may be cases where a certification conference and certification order will not be necessary to protect the substantial rights of the parties, for instance, where there is no dispute as to the substance of the claims. But where, as here, neither the complainant nor the commission has put the respondent on notice of a claim in advance of the hearing, the prejudice is manifest.[11] The commission's contention that it had the

---

[11] To give one example, the hearing officer relied on the lack of "evidence of white bouncers whose employment was terminated," noting that, "[w]hile Bennett testified that he had terminated numerous other employees, he could not specify their

authority to amend the certified issues <u>after</u> the presentation of evidence cannot be squared with the requirements of due process and the act.  See G. L. c. 30A, § 11.  Cf. <u>Vaspourakan, Ltd.</u>, 401 Mass. at 354 ("by the time of the de novo hearing . . . , any defect which might have existed in the notice was cured, because the licensee had detailed notice of all the facts supporting the charges . . ."); <u>LaPointe</u>, 389 Mass. at 458 (although notice was deficient, "[t]hat deficiency . . . was cured at the first meeting with the board . . . when [licensee], with his counsel present, received precise notice of the subject matter of the proceedings").

Finally, we disagree with Sims's and the commission's assertions that the respondents' own filings and examination of the witnesses show that they were on actual notice of a claim of race-based termination.  The portions of the record cited do not support their assertions.  Also, given that Sims indisputably raised a claim of hostile work environment based on race, it is hardly noteworthy that the respondents examined the witnesses about the allegations of race discrimination at the club.[12]

_____

names, race or color."  Putting aside whether this was a proper allocation of the burdens of proof, the respondents would not have known of the need to offer such evidence if they were not on notice that Sims was claiming termination based on race.

[12] Given our conclusion that notice was inadequate, we need not address the respondents' arguments that the commission's

2. Hostile work environment. The respondents challenge the commission's resolution of the hostile work environment claim solely on the basis that it was unsupported by substantial evidence. Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6). This is a deferential standard, under which "[a] court may not displace an [agency's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Labor Relations Comm'n v. University Hosp., Inc., 359 Mass. 516, 521 (1971).

To prove a hostile work environment claim, Sims "needed to establish that the conduct alleged was sufficiently severe and pervasive to interfere with a reasonable person's work performance." Muzzy v. Cahillane Motors, Inc., 434 Mass. 409, 411 (2011). See Windross, 71 Mass. App. Ct. at 868-869. "The point at which a work environment becomes hostile or abusive does not depend on any 'mathematically precise test.'" Billings v. Grafton, 515 F.3d 39, 48 (1st Cir. 2008), quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993). Rather, the fact finder must consider the totality of the circumstances, which "may include the frequency of the discriminatory conduct; its

---

findings on pretext and lost wages were unsupported by substantial evidence.

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, supra at 23.

The hearing officer made the following findings: Romano refused to acknowledge Sims or address him by name, while greeting the nonblack bouncers by name, shaking their hands, and talking to them; Romano always stationed Sims outside, sometimes reassigning him there after Wong had already assigned him to a different location; Romano told a white bouncer that he did not want "colored people" using the newer walkie-talkies; Romano limited the number of Black dancers who could work the night shift; Sims once heard Romano yell, "[G]et that [B]lack bitch off the stage right now"; and Romano referred to the Black dancers as "niggers." While we agree with the respondents that the finding regarding the walkie-talkie incident was based on hearsay,[13] a reasonable mind could accept the remaining findings as adequate to support a conclusion that Sims was subjected to a racially hostile work environment. See Augis Corp. v. Massachusetts Comm'n Against Discrimination, 75 Mass. App. Ct.

---

[13] Sims and the commission raise no argument to the contrary. Instead, they argue that the commission is not bound by the rules of evidence and can admit hearsay that has sufficient indicia of reliability. They fail to explain, however, why the hearsay was reliable.

398, 408-409 (2009) (single instance of supervisor calling complainant "fucking nigger" sufficient to support liability); Windross, 71 Mass. App. Ct. at 869-870 (jury could have found hostile work environment based on evidence that coworkers made racist comments toward plaintiff and ignored and ridiculed him). The respondents point out that Romano did not direct some of the acts at Sims, but the commission could have considered Romano's harassment of others, known to Sims, as "part of the environment in which [Sims] worked." Cuddyer v. Stop & Shop Supermkt. Co., 434 Mass. 521, 541 (2001). Moreover, contrary to the respondents' contention, that Sims was able to get his work done despite the harassment did not preclude a finding of liability. See Billings, 515 F.3d at 51.

Conclusion.[14] So much of the amended judgment as affirms the commission's finding that Sims was unlawfully terminated on the basis of race and awards attorney's fees and costs is vacated. The matter shall be remanded to the commission for redetermination of emotional distress damages and attorney's fees, both adjusted to reflect that Sims prevailed only on his claim of hostile work environment. The remainder of the amended

_____

[14] Because the award of emotional distress damages was based in part on the finding of race-based termination, it must be redetermined on remand. We therefore do not address the respondents' argument that the award was unsupported by substantial evidence.

judgment, affirming the commission's finding that Sims was subjected to a racially hostile work environment, is affirmed.

<u>So ordered</u>.